Jones, J.
This appeal seeks review of a jury verdict for injured plaintiffs based on defective scaffold planking when the recovery at the time of trial was predicated on a breach of warranty theory. The question before us is what shall be the effect of our decision in Codling v. Paglia (32 N Y 2d 330) under the doctrine of strict products liability.
In Supreme Court, Kings County, plaintiffs recovered a judgment based on jury verdicts rendered after separate trials on the issues of liability and damages. On appeal, the Appellate Division, Second Department, by a divided vote affirmed the findings of fact but reversed the judgment on the law and dismissed the complaint. Plaintiffs now appeal to our court as of right.
The job superintendent of Julius Nasso Concrete Corporation (the Contractor) ordered a quantity of lumber from defendant lumber company by telephone. He testified that he asked for scaffold planking; defendant’s vice-president who took the order testified that he asked for rough spruce planking without specifying which of two available grades he wanted or indicating the use to which it would be put. Defendant lumber company delivered some 200 pieces of 2 inch by 9 inch rough spruce planking 13 feet long; the Contractor’s foreman checked for quantity but not for quality. The lumber was stacked with only ends and *120 edges visible. Later the planks were brought down from the first floor of the building under construction to the C-3 level. About five or six planks were laid side by side an inch or so apart, over an opening with one end of each plank resting on a concrete platform and the other end on a steel beam with an overhang of a foot. Plaintiffs, a carpenter and a laborer, both stepped out on this planking platform at about the same time, and a few seconds later the middle plank cracked, causing them to fall some 25 or 30 feet to the foundation below. After the accident plaintiff Velez saw that the broken plank was rotted. The uncontroverted testimony was that the plank which broke was rotted on one side with a split or egg-shaped break all the way across the rotted area which was about 20 inches in diameter and ran completely across the plank.
Plaintiffs brought the present action to recover damages for the personal injuries which they suffered on the theories of both negligence and breach of warranty. At the close of the entire case at the separate trial on the issue of liability, the trial court dismissed the negligence causes of action and reserved decision on defendant’s motion to dismiss the causes of action for breach of warranty to the extent that it was based on the claim of a valid disclaimer of liability within the purview of the Uniform Commercial Code (§ 2-316, subd. [2] and § 1-201, subd. [10]). The jury found for plaintiffs on the theory of breach of warranty, and the Trial Judge denied defendant’s motion to dismiss. A different jury subsequently awarded substantial damages. No issue is tendered on the appeal now before us as to either the negligence theory of liability or the issue of damages.
On the issue of liability for breach of warranty the invoice for the lumber was received in evidence. It bears in large capital letters the legend
“ NO CLAIMS ALLOWED UNLESS MADE IMMEDIATELY AFTER. DELIVERY ” (underscored words in original). Immediately below this legend appeared the following:
“ NOTE — The purchaser shall be deemed to have accepted these goods as is, the seller having made no representations or warranties whatsoever with respect to their quality, fitness for use, or in any other regard thereto.”
The word “ NOTE ” was printed in the largest type used in the body of the invoice, but the text of the disclaimer is printed in the smallest type used on the invoice.
*121 The majority at the Appellate Division found that the “ only serious question ” presented on the appeal to that court was the effect to be given this disclaimer of liability or exclusion of warranty of fitness under the Uniform Commercial Code. The trial court had held that the requirements of the Uniform Commercial Code (§ 2-316, subd. [2] and § 1-201, subd. [10]) were not met and accordingly did not reach the question as to whether, had they been met, the disclaimer would have been valid against the purchaser’s employees. The majority at the Appellate Division, on the other hand, held that the requirements of the code had been met on the facts of this case and that the effect of the disclaimer extended to plaintiffs. The dissenters at the Appellate Division would have sustained the verdict for plaintiffs on what is now described as the strict products liability theory which we upheld in Codling v. Paglia (32 N Y 2d 330, supra) which had not been decided at the time of the trial or of the appeal, but which, as the dissenters noted, had been foreshadowed by decisions in each of the other three Departments of the Appellate Division (i.e., Codling v. Paglia, 38 A D 2d 154 [3d Dept.]; Singer v. Walker, 39 A D 2d 90 [1st Dept.]; and Ciampichini v. Ring Bros., 40 A D 2d 289 [4th Dept.]). It was the position of the dissenters that even if the disclaimer were otherwise valid, they would hold it ineffective to shield defendant lumber company from liability to these plaintiffs.
The order of the Appellate Division should be reversed and the case remitted for a new trial because the charge to the jury was erroneous under Codling, when viewed with the benefit of hindsight.
In view of our holding in Codling v. Paglia (32 N Y 2d 330, supra) the liability of defendant lumber company must be determined under the principle of strict products liability there announced. If this verdict for plaintiffs could have been sustained on that theory on the record before us, we would have reversed the order of the Appellate Division and reinstated plaintiffs’ judgment. We conclude, however, that plaintiffs’ verdict cannot be sustained under Codling on the present record and accordingly we reverse and remit the case for a new trial in the light of our decision in Codling.
*122 In the Codling formulation: —
(a) Defendant lumber company, here the supplier, would be liable,
(b) To plaintiffs as users (an a fortiori liability as compared to liability to nonuser, innocent bystanders as in Codling, cf., e.g., Goldberg v. Kollsman Instrument Corp., 12 N Y 2d 432),
(c) If the product, here the rough spruce planking, was defective, and
(d) If the defect was a substantial factor in bringing about plaintiffs’ injuries; and
(e) If at the time of the occurrence the plank was being used for the purpose and in the manner normally intended, and
(f) If plaintiffs, as users of the product would not by the exercise of reasonable care have both (i) discovered the defect and (ii) perceived its danger, and finally
(g) If plaintiffs by the exercise of reasonable care would not otherwise have averted their injuries. [32 N Y 2d, at p. 342.]
Although this trial, held in May, 1971, was not conducted in clairvoyant anticipation of our decision in Codling, the record now before us meets many of the requirements we there set down.
There appears to be no question but what as to parties, items (a) and (b) above, the present case falls within the Codling ambit.
As to the defect in the planking, this appears to have been established on the record in view of the uncontroverted testimony as to the substantial area of rot in the plank which broke. In addition, the jury was instructed that to find for plaintiffs, as they did, plaintiffs must prove, “ Thirdly, that the lumber was in a defective condition on the date that it was delivered to plaintiffs’ employer ”.
As to (d) above, the jury was charged, in clearly sufficient terms, that to find for them, plaintiffs must prove that the defective condition of the plank was the proximate cause of their injuries.*
*123 Again as to use for the purpose and in the manner normally intended, (e), above, the jury was charged that to find for plaintiffs, plaintiffs must prove, “ Fourthly, that the lumber was properly used in erecting the scaffold, that it was used in such a manner for which it was to be used, if the plaintiff has proven to your satisfaction that the use was to be for a scaffold. Then there arises the further question, namely, was the lumber or planks, were the planks used properly in creating this scaffold? ”
Items (f) and (g) above in Codling relate to contributory fault on the part of the plaintiffs. The jury was charged that to find for plaintiffs the plaintiffs must prove “ that the plaintiffs sustained personal injuries as a result of an unfit or defective condition of the lumber and without any misuse or mishandling of the lumber on the part of the plaintiffs or plaintiffs’ employer or co-employees contributing to such injury ” (emphasis added).
All of these findings were implicitly made by the jury when it returned its verdict for plaintiffs, and all findings of fact were affirmed by the majority at the Appellate Division. Accordingly these issues are now beyond our review.
We have concluded, however, that the charge, or more precisely the refusal to charge, with respect to proof of absence of contributory fault on the part of plaintiffs was erroneous. In the Codling formulation we spelled this matter out in some detail and distinguished between contributory fault with respect to the defect itself (i.e., user of product in the exercise of due care would not both have discovered the defect and perceived its danger) and contributory fault independent of the defect (i.e., user of the defective product would not otherwise have averted his injury) (32 N Y 2d, at p. 342).
As to contributory fault with respect to the defective lumber itself, again the factual issue is narrow. We take it that if it were found that in the exercise of reasonable care plaintiffs would have discovered the defect, there would then be no question in this factual setting that they would be held responsible for perceiving its danger as well.
With reference to the obligation of plaintiffs to exercise reasonable care to discover the rotten condition of the planking, we find error in the record.
*124 The trial court had adequately charged as to the necessity for a finding that there had been no “ misuse or mishandling of the lumber on the part of the plaintiffs ”. Nothing had been included in the initial charge with respect to discovery of the defect. After the conclusion of the charge counsel for defendant lumber company explicitly adverted to the issue of contributory negligence and requested a charge “ as to what [plaintiffs’] duties were as to care for themselves in examining, in seeing an obvious defect or looking to see before they go on [the platform] ”. This request was refused and we hold that such refusal was error. Thus there must be a new trial. The requirement that plaintiffs here by the exercise of reasonable care would not have both discovered the defective condition of the plank and perceived its danger, was a prerequisite to their recovery. This prerequisite was not met on this record.
There remains also the question of what effect if any shall be given the disclaimer and waiver of warranty printed on the lumber company’s invoice. For purposes of the present disposition we assume, without deciding, that the waiver here involved, so far as size and style of print, location, etc., met the requirements of section 1-201 (subd. [10]) of the Uniform Commercial Code as “ conspicuous ”.
Subdivision (2) of section 2-316 of the Uniform Commercial Code in pertinent part provides: “ to exclude or modify the implied warranty of merchantability of any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that ‘ There are no warranties which extend beyond the description on the face hereof. ’ ” This provision is obviously addressed to the language and form to be used if any exclusion of warranties is to be effective. The section does not undertake, nor does any other section of the code undertake, to specify who shall and who shall not be bound by an exclusion of warranties which meets the requirements of section 2-316.
We are then thrown back on broad principles of contract law. Although strict products liability sounds in tort rather than in *125 contract, we see no reason why in the absence of some consideration of public policy parties cannot by contract restrict or modify what would otherwise be a liability between them grounded in tort.
In this case, however, we find no basis for holding that these plaintiffs should be barred from recovery by reason of the imprint of the exclusion of warranties legend on the invoice in this case. Plaintiffs were complete strangers to the contract; there is no evidence that either of them ever saw the invoice in question or knew of its contents. No authorities or rationale are tendered to support the extension of the disclaimer to plaintiffs with reference to claims predicated on strict products liability. We agree with the position of the dissenters at the Appellate Division that these plaintiffs were not bound by the terms of the contract between their employer and defendant lumber company. We see no necessity to labor the point that, in the absence of special circumstances not present here, buyer and seller cannot contract to limit the seller’s exposure under strict products liability to an innocent user or bystander.
The order of the Appellate Division must be reversed and the case remitted for a new trial.
Chief Judge Fuld and Judges Bubke, Bbeitel, Jasen, Gabbielli and Wachtleb concur.
Order reversed and a new trial granted, with costs to abide the event.

 We observe in passing that there might be a delegation by the supplier to the buyer of the duty of inspection of the lumber (not disclosed on the record before us), the violation of which would either break or supplement the chain of proximate causation or conceivably expose the buyer either to direct liability to the injured persons or to a third-party claim-over by the supplier.