Fuchsberg, J.
(concurring). I join wholeheartedly in the majority’s extension to these plaintiffs of the tort Statute of Limitations, running as it does from the dates of their inju *405 ties. In doing so, I note that it has required a choice between that and the Uniform Commercial Code’s four-years-from-time-of-sale statute which the defendants have espoused.
Also, while I read Judge Jones’ opinion to imply that the tort statute, as well as that of the code, would likewise have been applicable to the plaintiffs if, instead of being users or bystanders, they had been in privity with the sellers, it by no means lays the subject to rest. Of course, we need not reach that question here. But a future choice between the Statute of Limitations provisions of the code and that of tort law will be unavoidable in cases of consumer plaintiffs who come within the compass of the code, though I take leave to venture the opinion that the choice of the tort rule for all persons injured in such cases would both appear to partake of the virtues of simplicity and equality of application, and to be the logical end-product of the legal evolution hereinafter discussed.
I therefore believe that, while this subject is before us, it will serve a useful and stabilizing purpose to more precisely spell out the relationship between code and tort Statute of Limitations, especially since the resurrection of the historic and nationwide confusion which in the past has characterized the growth of law in these sometimes overlapping fields is almost sure to be attempted. (Shanker, Strict Tort Theory of Products Liability and the Uniform Commercial Code: A Commentary on Jurisprudential Eclipses, Pigeonholes and Communication Barriers, 17 Western Reserve L Rev 5; Little-field, Some Thoughts on Products Liability Law: A Reply to Professor Shanker, 18 Western Reserve L Rev 10; Twerski, From Codling to Bolm to Velez; Triptych to Confusion, 2 Hofstra L Rev 489; Franklin, When Worlds Collide; Liability Theories and Disclaimers in Defective Product Cases, 18 Stan L Rev 974; Rapson, Products Liability Under Parallel Doctrines: Contrasts Between the Uniform Commercial Code and Strict Liability in Tort, 19 Rutgers L Rev 692; Reitz, Warranties and Product Liability: Who Can Sue and Where, 46 Temp LQ 527.)
The problem has arisen in the past largely because a cause of action for strict liability in tort was, by general agreement, regarded substantively the same as one brought in contract for breach of implied warranty, assuming the latter had been stripped of the recognized sales defenses of notice (Uniform Commercial Code, § 2-607), disclaimer (Uniform Commercial Code, § 2-316), and privity (Uniform Commercial Code, §2- *406 318). (See Prosser, Torts [4th ed], § 98, p 658, n 57; Markle v Mulholland’s Inc., 265 Ore 259, 273 [concurring opn of Chief Justice O’Connell]; Dickerson, Was Prosser’s Folly Also Tray-nor’s?, 2 Hofstra L Rev 469, 478; Rapson, Products Liability Under Parallel Doctrines: Contrasts Between the Uniform Commercial Code and Strict Liability in Tort, 19 Rutgers L Rev 692.)
So, with the advent of the Uniform Commercial Code, which appeared to include personal injury recovery as an element of damages consequential to the breach of implied warranty within its embrace (Uniform Commercial Code, §§ 2-715, 2-719, subd [3]), it should not be surprising that controversy arose as to whether the code and its predecessor, the Uniform Sales Act, pre-empted the field. (See Price v Gatlin, 241 Ore 315; Markle v Mulholland’s Inc., 265 Ore 259; Hawkins Constr. Co. v Matthews Co., 190 Neb 546; Seely v White Motor Co., 63 Cal 2d 9; Cova v Harley Davidson Motor Co., 26 Mich App 602.)
However, overwhelming judicial authority throughout the country and a fair reading of legislative purpose make clear that the better argument by far is that legislative pre-emption of strict liability in tort was not intended by the drafters of the code. (See the cases and authorities already cited and the authorities collected in Mr. Justice Shapiro’s excellent opinion below [44 AD2d 316, 324]; see, also, Noel, Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk, 25 Vand L Rev 93, n 4, wherein the writer points out that some 36 jurisdictions have approved of § 402A.) In fact the genesis of section 402A of the Restatement of Torts (comment m), as well as the code’s New York legislative history (McKinney’s Cons Laws of NY, Book 62 Vi [1964 ed], pp 315-317), also leads inexorably to that conclusion. For instance, while proposed "§ 16-B” of the code was intended to be pre-emptive of recovery in tort, it was rejected on the very ground that it would not be acceptable to State Legislatures. (See Wade, Is Section 402A of the Second Restatement of Torts Preempted by the UCC and Therefore Unconstitutional?, 42 Tenn L Rev 123.) The drafters thus evinced their intent not to affect the independent development of tort law by having warranty and strict liability in tort impinge one on the other.[1]
*407 The clearest confirmation of that appears from a study of how those of provisions of the code concerned with the three crucial areas of notice of defect, disclaimer and privity make exceptions for consumer injury cases. As to the requirement that the purchaser give the seller notice of a defect within a reasonable time, found in section 2-607 of the Uniform Commercial Code, the code drafters stated in comment 4 that a "’reasonable time’ for notification from a retail consumer is to be judged by different standards’’. (Italics supplied; McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, p 502.) With regard to disclaimer requirements, the code’s permissiveness in section 2-316 is read both in the light of subdivision 2 of section 2-719’s provision that limitations of liability for damages in personal injury cases are prima facie unconscionable, as well as that of section 2-302, which gives courts the power to apply the doctrine of unconscionability as a matter of law to any contractual matter which calls for it.[2] And the requirement of privity, in section 2-318, is accompanied by a specific statement (in comment 3) that the expansion of the privity doctrine is to be left to the courts in consumer cases.
Therefore, it is fair to conclude not only that the code requirements impliedly recognize a cause of action in tort but that, if strict liability in tort had not evolved, the code might well have arrived at the same or a similar substantive stance itself. Indeed, a careful reading of section 2-725 of the code (or the comments to it), where the four-year-from-time-of-delivery limitation is set out, points up the complete absence of references to personal injury and third-party beneficiary actions. The inference is that the intent was to deal exclusively with commercial transactions. Expressed in the drafter’s own statement of statutory purpose, the aim was: "To introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale , whose *408 contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period.” (Emphasis added.)
The emphasis thus makes quite clear that the statute was meant to cover "contractual” actions only. Furthermore, to the extent that uniformity was the desideratum of this statute, such a goal is not possible under the tort rationale, since the several States have varying tort Statutes of Limitation, beyond our power to standardize. (Murray, Products Liability —Another Word, 35 U Pitt L Rev 255.) Moreover, the policy decision differentiating consumer injury actions from ordinary commercial transactions exemplified by the sections previously cited seems best furthered by a reading of section 2-725 as equally flexible and directed toward the commercial, not the consumer-injury, cause of action.
Accordingly, analysis and history not only bear out the force of the dichotomy, in the frame of reference of this case, between a tort and contract, as pointed out by Judge Jones, but also leave no reasonable remaining doubt that neither the provisions of the code nor the intent behind it result in their pre-emption of any tort causes of action.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler and Cooke concur with Judge Jones; Judge Fuchsberg concurs in a separate opinion.
In each case: Order affirmed, with costs. Question certified answered in the affirmative.

. Professor Karl Llewellyn, during discussion of what eventually became section 2-318 of the Uniform Commercial Code, indicated that the distinction to be drawn was between tort and commercial law, not between negligence and commercial law. (Wade, supra, p 138, n 25.)

. There has been considerable ferment as to whether it makes any sense to apply a rule of prima facie unconscionability to limitation of damages but not to total disclaimer of damages. (See Franklin, When Worlds Collide: Liability Theories and Disclaimers in Defective Product Cases, 18 Stan L Rev 974, 995; Rapson, Products Liability Under Parallel Doctrines: Contrasts Between the Uniform Commercial Code and Strict Liability in Tort, 19 Rutgers L Rev 692, 710.) In Velez v Craine & Clark Lbr. Corp. (33 NY2d 117) this court indicated that disclaimers negotiated by a consumer might well be valid under proper circumstances; as I read it, that comment in no way contradicts the thesis here.