C. ALDEN MEAD, as Administrator of the Estate of CLAUDE D. MEAD, Deceased, et al., Respondents, v WARNER PRUYN DIVISION, FINCH PRUYN SALES, INC., Appellant, et al., Defendants.

Third Department, May 19, 1977

*Carter, Conboy, Bardwell, Case & Blackmore (William P. Soronen, Jr.,* of counsel), for appellant.

*LaPann, Reardon, FitzGerald & Firth (Peter D. FitzGerald* of counsel), for respondents.

*Bond, Schoeneck & King (Michael P. Shanley* of counsel), for Onondaga Supply Company, Inc., defendant.

*Simpson, Thacher & Bartlett (George M. Newcombe* of counsel), for Frigidaire Sales Corporation, defendant.

HERLIHY, J. Plaintiffs seek damages for the wrongful deaths of their decedents. On August 20, 1971 the appellant Warner Pruyn Division, Finch Pruyn Sales, Inc., sold a refrigerator to a Mr. and Mrs. Ross. On October 15, 1973 Mr. and Mrs. Ross sold their residence, including the refrigerator, to Claude D. and JoAnn Ross Mead. On August 29, 1975 a fire at the Mead residence caused the deaths of the plaintiffs' intestates. The plaintiffs have alleged that defects in the refrigerator caused the fire.

The fundamental issue on this appeal is whether or not a retailer of goods which he does not manufacture and over which he has no control as to hidden or latent defects can be

subjected to the remedy of strict products liability simply as a retailer of such goods and as to persons not a party to the initial sale by the retailer. To put it more succinctly—is a retailer an indefinite guarantor of a product as to defects which might render it harmful to an innocent user?

The order should be affirmed as stated in the opinion of Special Term, *inter alia:* "The imposition of this responsibility will bring from the retailer further pressure on the manufacturer for 'safety in design and production', all to the protection of the public". (87 Misc 2d 782, 785.) There is the additional consideration that there will be more possible defendants and thus, perhaps, greater opportunity to the consumer to commence an action against the responsible party.

Research discloses that there is respectable authority, including the Restatement, Torts 2d (§ 402A) which favors imposing liability on a retailer. The justification for the imposition of such liability is said to be that: "[T]he seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products" (Restatement, Torts 2d, § 402A, Comment C). A leading case in favor of imposing liability on the retailer is *Vandermark v Ford Mortor Co.* (61 Cal 2d 256).

The reasons for imposing such liability were stated therein as follows (pp 262-;263): "Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products [citation omitted]. In some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure

on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety. Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship."

The court then stated, relying upon *Greenberg v Lorenz* (9 NY2d 195, 200), that a retailer engaged in the business of distributing goods to the public is strictly liable in tort for personal injuries caused by defects in goods sold by it.

However, it is clear that the theory of strict products liability as imposed by the court in *Vandermark* would be different from the New York theory because the court in *Vandermark* would not let a retailer limit his liability to a buyer by contract. In the case of *Velez v Crain & Clark Lbr. Corp.* (33 NY2d 117, 125) it was noted that parties to a sale could limit their liability each to the other by contract provisions. However, the court in *Velez* expressly held that "in the absence of special circumstances not present here, buyer and seller cannot contract to limit the seller's exposure under strict products liability to an innocent user or bystander" (p 125). While it is to some extent tempting to contend that since Mr. and Mrs. Mead purchased the machine, they are not "innocent" users or "bystanders", such a distinction herein would be unrealistic.

Accordingly, the reasons advanced in the Restatement of Torts and which are substantially the arguments of the court in *Vandermark v Ford Motor Co. (supra)* would require a finding that the plaintiffs' intestates are in the group entitled to assert strict products liability if the court adopts the theory that a retailer can be so liable.

The doctrine has been adopted in other jurisdictions *(Casrell v Altec Inds.,* 335 So 2d 128 [Ala]; *Hiigel v General Motors Corp.,* 544 P2d 983 [Col]; *Berkebile v Brantly Helicopter Corp.,* 337 A2d 893 [Pa]; *Peterson v Bachrodt Chevrolet Co.,* 61 Ill 2d 17; *Moss v Polyco, Inc.,* 522 P2d 622 [Okla]; *Kleve v General Motors Corp.,* 210 NW2d 568 [Iowa]; *Newmark v Gimbel's, Inc.,* 54 NJ 585; *Brandenburger v Toyota Motor Sales,* 162 Mont 506; *Markle v Mulholland's, Inc.,* 265 Ore 259; *Dippel v Sciano,* 37 Wis 2d 443; *Clary v Fifth Ave. Chrysler Center,* 454 P2d 244 [Alaska]; *Williams v Ford Motor Co.,* 494 SW2d 678 [Mo App]; *Seattle-First Nat. Bank v*

*Volkswagen of Amer.,* 525 P2d 286 [Wash]; *Tarwacki v Royal Crown Bottling Co. of Tampa,* 330 So 2d 253 [Fla App]; *Embs v Pepsi-Cola Bottling Co. of Lexington,* 528 SW2d 703 [Ky App]; *Hovenden v Tenbush,* 529 SW2d 302 [Tex Civ App]; *Allison Steel Mfg. Co. v Superior Ct. of Maricopa County, Div. 3,* 20 Ariz App 185).

The starting point of New York State's express adoption of the theory of strict products liability to innocent bystanders is *Codling v Paglia* (32 NY2d 330). As the court pointed out in *Codling,* products liability was not new to New York State and the liability of manufacturers to remote purchasers and parties not having privity of contract with the manufacturers was already established. What *Codling* did was to remove artificial legal distinctions that would appear to favor one class of injured persons over another class when realistically there was no sound public policy for maintaining such distinctions. The end of the doctrine of privity of contract for strict products liability was simply the culmination of prior cases eroding the doctrine in particular factual circumstances. An examination of the *Codling* case reveals that it dealt solely with liability of a manufacturer *(Codling v Paglia, supra,* pp 341, 342).

In *Goldberg v Kollsman Instrument Corp.* (12 NY2d 432, 436) it was noted that liability would run against vendors as well as manufacturers for a breach of implied warranty of fitness for use. Nevertheless, that court found that persons not in privity would not have a cause of action against a manufacturer of a component part of an airplane. In the case of *Velez v Craine & Clark Lbr. Corp. (supra)* a supplier of planks to an injured person's employer for scaffolding purposes was subjected by the court to strict products liability as to the injured employee. While the supplier in the *Velez* case was apparently not a manufacturer, it was clearly not to be held liable simply because it was a vendor of planks, but instead its liability was as a supplier for scaffolding purposes.

However, the *Codling* case does not appear to assess strict products liability in terms of the nature of the product or the knowledge of the seller of the particular purpose for which the product was purchased. In the case of *Micallef v Miehle Co.* (39 NY2d 376, 387) the court observed that claims of a person not having contractual privity with a manufacturer are "more correctly treated under the theory of strict products liability" (citations omitted). The conclusion is inescapable

that "strict products liability and liability to a remote user based on implied warranty are one and the same cause of action" *(Dickey v Lockport Prestress,* 52 AD2d 1075, 1076).

It is clear that prior to the case of *Codling v Paglia (supra)* a nonmanufacturing vendor of a product was subject to liability for breach of implied warranty to remote users and under such circumstances the imposition of strict liability against such vendors after *Codling* is not new even if perhaps a broader form of liability. To now reject such liability just because we would call the action one in strict products liability would be unwarranted. Further, the retailer may seek contribution from the manufacturer as a joint tort-feasor (see CPLR 1401; *Dole v Dow Chem. Co.,* 30 NY2d 143) or provide for contractual indemnity (see *Haman v Humble Oil & Refining Co.,* 34 NY2d 557; 2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.09) or finally, seek indemnity from the manufacturer based upon strict products liability (see *Infante v Montgomery Ward & Co.,* 49 AD2d 72, 75).

The order should be affirmed, with costs to plaintiffs.

GREENBLOTT, J. P., SWEENEY, MAIN and LARKIN, JJ., concur.

Order affirmed, with costs to plaintiffs.