OPINION OF THE COURT
Robert A. Harlem, J.
The defendants Musson, Faber & Teed, Inc. (hereafter Mus-son) move for summary judgment.
*957 The complainant alleges that the plaintiff, Dennis C. Well-man, purchased a silo and silo unloader from the defendants, Harder Silo Company, Inc. (hereafter Harder) and Musson. It is further alleged that these same defendants, jointly or as mutual agents, servants or employees, sold and installed the device as part of the sale. The defendant, Supreme Farmstead Equipment, Inc. (hereafter Supreme) manufactured the mechanical device. It is claimed by the plaintiff that on December 12, 1977 he was injured by the mechanical device, and the injury is attributed to a defect in the design or manufacture of the item or that it was improperly installed. The cause of action appears to be premised upon the theory of strict products liability. There is a second cause of action to recover the purchase price of the silo and unloader for failure of consideration.
The defendant, Musson, recites in its moving papers the chronology of events which lead to the purchase. Dennis Wellman had some contact with Mr. Faber of the defendant, Musson, firm concerning the acquisition of a silo and unloader. It is not clear as to the identity of the person who instigated the initial contact. The circumstances of a potential prospect was relayed by Faber to a salesman for the defendant, Harder. This salesman thereafter engaged in discussions and negotiations with the plaintiff which eventually led to the submission of a purchase order by Wellman. The order for the equipment is confirmed by Harder on a paper called an invoice, reciting the date of the order as June 7, 1976 and setting forth the Musson firm as the dealer. Also attached to the moving papers is another document on stationery or a billhead of Harder showing the same purchase and giving a date of July 1, 1976. An invoice was issued by Harder on June 28, 1976 for the purchase price of the equipment delivered and erected. The silo and unloader were delivered directly by Harder to the plaintiff and they were erected at the farm of the plaintiff by personnel connected with Harder. At no time did any of the equipment pass through the hands of Musson, there was no opportunity for inspection, there is no evidence of any representations having been made and, obviously, no control was exercised over the property. Musson played no part in the installation of the equipment.
As a result of this sale Musson was paid a commission.
The Musson firm is engaged in the business of selling farm equipment and supplies, and maintained at their place of *958 operations literature concerning the type of silo and unloader which were purchased by the plaintiff. Although not clearly stated, it is a logical assumption that the purchase in this instance was at least initially motivated by access to the literature.
It is essentially the position of Musson that the firm was not a participant in the sale, but merely served to assist in getting the parties together. There appears to be no question that Musson was not directly involved in the transfer of title. It is also clear that Musson did obtain some financial benefit as a consequence of the sale.
Inasmuch as the complaint appears to be limited to a theory of strict products liability, other theories of recovery (e.g., negligence, express warranty and implied warranty) will not be addressed.
There is a rationale which concludes that retailers should be liable in strict products liability cases to the same extent as manufacturers or other distributors. It is said that they, like manufacturers, operate for the purpose of distributing goods to the public, they are an integral part of the over-all producing and marketing enterprise which should bear the costs of injury resulting from defective products; in some cases the retailer may be the only member of that enterprise reasonably available to an injured plaintiff; in other cases the retailer himself may play a substantial part in insuring that the product is safe, or may be in a position to exert pressure on the manufacturer to that end (see Vandermark v Ford Motor Co., 61 Cal 2d 256). It has also been reasoned that indemnity is available among the defendants who participated in either the manufacture or marketing of a product, and that by dividing the loss among them in terms of their culpable conduct, it may be shared by their degree of participation in the event which ultimately led to the injury (see 63 Am Jur 2d, Products Liability, § 148, p 153).
In Codling v Paglia (32 NY2d 330), New York courts accepted the theory of strict tort liability. In the course of its rationale, the Court of Appeals recognized the expansion of manufacturing operations and distribution of products. The court rejected the notion that a manufacturer may solicit the purchase and use of a product in reliance upon an assurance of its quality and yet attempt to avoid responsibility when the expected and intended use of the product produces injury. The basis for the rationale is simple and unadorned, being that a *959 manufacturer should be prepared to underwrite a loss caused by a product which produces injury when that product is being operated in the manner intended, is being used for the purpose designed and is defective in either design or function under circumstances where the user could not reasonably detect the defect or avoid the injury. Responsibility is placed where the fault is found to lie.
In the present action it is patent that Musson neither designed, manufactured, delivered or installed the equipment which was purchased. Indeed, they never had any opportunity to control this equipment, oversee its installation or have any input with respect to any aspect of its design, manufacture or installation.
In applying the rationale of Codling (supra) it would be a distortion to hold that Musson, under the circumstances of this case, should respond in damages. It has been held that to require a defendant circumstanced as Musson is in this case to be liable is too great a burden to impose upon vendors of products manufactured by others. In Alfieri v Cabot Corp. (17 AD2d 455), it was determined that the action against the retailer should be dismissed in that the offending product was packaged by the manufacturer and resold by the retailer in the same package, there being nothing about the use of the product by the purchaser which might prove to be harmful. While the product in the instant case could very well be harmful if manufactured or installed improperly, there is nothing in the record before the court to indicate that Musson was apprised of any information which would show either of these improprieties. With respect to the product manufactured by others and the liability of the retailer (see Lehmann v Macy & Co., 207 Misc 833; Bergenfeld v Alexander’s Dept. Stores, 207 Misc 832; Pimm v Graybar Elec. Co., 27 AD2d 309).
It is recognized that it could be asserted that the defendant, Musson, may seek indemnification from one or both of the other defendants. While this may be true, it would serve no purpose in the resolution of the issues to permit Musson to continue as a defendant. Initially the liability of Musson to the plaintiff must be resolved, and under the law as outlined above, there appears to be no liability.
The predicate for holding the distributor liable solely because he may be a link in the chain by which the product reached the hands of the plaintiff and primarily because of *960 some financial gain obtained by someone situated as Musson is illogical. Responsibility should walk hand-in-hand with fault and should not be premised upon either the immediate availability of an individual or corporation as a target, nor is it sensible to require such a distributor to respond merely because some financial gain was obtained.
Since under no theory could Musson be held answerable for the condition of the equipment, the motion for summary judgment is granted, without motion costs.