opinion of the court
Robert H. Wagner, J.
The defendant, Paul Abell, doing business as Abell Machine Tool Company (Abell) moves for summary judgment dismissing the plaintiffs’ complaint pursuant to CPLR 3212.
On August 25,1977 while operating a Rouselle Model 2, 15-ton, Inclinable Punch Press as an employee of Brainerd Manufacturing Company, Inc. (Brainerd), plaintiff, Cynthia Kirby, sustained personal injuries when her hand was caught between the press dies.
The following facts are undisputed. Abell was a manufacturer’s representative or distributor of heavy machinery, including punch presses manufactured by the defendant, Rouselle Corporation (Rouselle). Sometime before September 16, 1974, Brainerd contacted Rouselle concern *292 ing the acquisition of a punch press manufactured by Rouselle. Rouselle, in turn, sent a letter dated September 16, 1974 to Brainerd, advising them to contact Abell. Shortly thereafter, Abell contacted Brainerd and in due course Abell received a purchase order from Brainerd for the punch press in question. The purchase order specified that the punch press was to be shipped direct to Brainerd. The price terms were F.O.B. Chicago, Illinois. On November 8, 1974 Abell executed and forwarded to Rouselle a purchase order for the specific Rouselle punch press which was the subject of the Brainerd purchase order and directed shipment direct from Rouselle to Brainerd. Subsequently, a punch press was shipped by Rouselle on February 26, 1975, directly to Brainerd. Thereafter, Abell received a copy of the bill of lading from the common carrier. Abell also received an invoice from Rouselle dated February 27,1975 stating that the punch press had, in fact, been shipped on February 26, 1975 via a trucking company. On March 3, 1975, Abell issued its invoice to Brainerd for the punch press in question. By check dated.March 13, 1975, received by Abell on . March 17, 1975, Brainerd paid the total invoice.
Brainerd, through Mr. Lippman, its president, was familiar with the Rouselle punch press prior to the time that Abell contacted Brainerd. Following delivery of the punch press from Rouselle, Brainerd installed the machine without any involvement on the part of Abell. At no time subsequent to the delivery of the machine to Brainerd, did Abell perform any service or maintenance work on the machine.
Plaintiff, Cynthia Kirby, seeks recovery for her personal injuries against the defendants, Rouselle and Abell, on the theories of negligence, strict products liability in tort and breach of express and implied warranties. Plaintiff, David I. Kirby, brings a derivative action for loss of services and expenses.
The acts which plaintiffs allege constitute the negligence of Abell are (1) failure to properly inspect the device in question to determine its hazardous propensity for accidental tripping, (2) failure to properly inspect the device to determine its hazardous lack of safety controls, guards, *293 barriers and devices, (3) failure to act upon knowledge or notice of the defective and hazardous condition of the press in question, (4) failure to warn operators of the danger of inadequate guards, controls, barriers and safety devices, (5) failure to warn operators of the hazard of accidental tripping, and (6) in marketing and distributing an inherently dangerous instrumentality without regard for the safety of operators.
The causes of action for strict liability allege that the press in question was defective when it left the control of each of the defendants and was not reasonably safe in that it subjected Cynthia Kirby and others who might reasonably be expected to use it to unreasonable risk of loss of life and limb.
It is alleged that Abell breached its implied and express warranties that the press was reasonably safe and fit for the purposes intended and was of merchantable quality. Abell argues that the warranty causes of action are time barred and that the negligence and strict products liability claims are insufficient as a matter of law.
Plaintiffs concede that inasmuch as the punch press was sold and delivered prior to March 13, 1975 and the action was not commenced until October 23, 1979, the warranty causes of action are barred by the four-year Statute of Limitations (Uniform Commercial Code, § 2-725; see Reis v Pfizer, Inc., 61 AD2d 777, affd 48 NY2d 664; McKee v Johns Manville Corp., 94 Misc 2d 327).
Plaintiffs do not submit any affidavit in opposition to the motion for summary judgment on the causes of action in strict liability and negligence. Rather, plaintiffs submit a legal memorandum in which they argue that the strict liability causes of action are sufficient as a matter of law. Their memorandum does not specifically address the causes of action sounding in negligence.
The fundamental issue presented in regard to the strict liability causes of action is whether a distributor, who, pursuant to a buyer’s instructions, directs the manufacturer to ship a specifically designated model punch press directly to the buyer, can be found liable in strict products liability if the punch press is defective when the manufac *294 turer, in fact, ships the press directly to the buyer and the distributor never inspected, controlled, installed or serviced the punch press. The answer is in the affirmative.
In Mead v Warner Pruyn Div., Finch Pruyn Sales (57 AD2d 340, 340-341), the Appellate Division, Third Department, was faced with the issue of “whether or not a retailer of goods which he does not manufacture and over which he has no control as to hidden or latent defects can be subjected to the remedy of strict products liability simply as a retailer of such goods and as to persons not a party to the initial sale by the retailer”. Relying heavily upon the Restatement of Torts 2d (§ 402A) and the California case of Vandermark v Ford Motor Co. (61 Cal 2d 256), the court decided that liability could be found. The justification for imposing liability is that: “ ‘[T]he seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidentia! injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products’ (Restatement, Torts 2d, § 402A, Comment Q.” (Mead v Warner Pruyn Div., Finch Pruyn Sales, supra, p 341.) The court also noted (supra, p 344) that: “[T]he retailer may seek contribution from the manufacturer as a joint tort-feasor (see CPLR 1401; Dole v Dow Chem. Co., 30 NY2d 143) or provide for contractual indemnity (see Haman v Humble Oil & Refining Co., 34 NY2d 557; 2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.09) or finally, seek indemnity from the manufacturer based upon strict products liability (see Infante v Montgomery Ward & Co., 49 AD2d 72, 75).”
As stated in Nickel v Hyster Co. (97 Misc 2d 770, 771): “Although section 402 A uses the specific term ‘seller’, *295 comment f makes it apparent that the rule applies to any manufacturer, wholesale or retail dealer, or distributor who is engaged in the business of selling products for use or consumption. Under the strict products liability doctrine as it exists in New York (see Codling v Paglia, 32 NY2d 330), defendants can be manufacturers, distributors, retailers, processors and makers of component parts who sell the product alleged to have caused injury (1 PJI 2:141), in essence, those responsible for placing the defective product in the marketplace (Queensbury Union Free School Dist. v Walter Corp., 91 Misc 2d 804).”[1]
Abell relies on Wellman v Supreme Farmstead Equip. (100 Misc 2d 956), a case which is factually analogous to the situation at bar. In that case the court, though recognizing that a rationale exists for holding that strict liability for a defective product should be imposed upon anyone who places a defective product into the stream of commerce, declined to follow such rationale and instead stated: “Responsibility is placed where the fault is found to lie” (supra, p 959).
I decline to follow Wellman (supra) for the following reasons. First, under strict liability if the product is defective, plaintiff has established a basis for liability without proving fault. Stated differently, fault is not an element in a cause of action for strict products liability. As the Court of Appeals in Caprara v Chrysler Corp. (52 NY2d 114, 123-124) recently stated:
“under the evolved doctrine of strict products liability, the scienter that is so vital to the negligence suit need not be shown. The shift so wrought is from fault to defect. No longer does anything turn on whether the defendant knew or reasonably could have been expected to know of the defect ***
“This contrast between negligence and strict products liability law is dramatic. In the former, that a defendant acted with due care will exonerate it from liability to the most seriously injured plaintiff. But, in strict products *296 liability, it is no longer any answer that the defendant injured the plaintiff carefully. Those who market products must stand behind them.”
Second, I agree with the rationale in the Restatement of Torts 2d, as adopted by the court in Mead (57 AD2d 340, supra). Third, I note that the court in Wellman (100 Misc 2d 956, supra) did not cite the Mead decision, a case previously decided by the Appellate Division in its own department. The doctrine of stare decisis requires this court to follow decisions or precedents made by the Appellate Division of another department until its own Appellate Division or the Court of Appeals pronounces a contrary rule of law (see Carmody-Wait 2d, NY Prac, § 2:63, p 75; Matter of Bonesteel, 38 Misc 2d 219, 222, affd 16 AD2d 324). Since neither party has cited, and the court’s own research has not disclosed any Appellate Division, Fourth Department, or Court of Appeals decision to the contrary, I am bound to follow the rule stated in Mead (supra).[2] Therefore, I deny so much of Abell’s motion as seeks summary judgment dismissing the causes of action in strict products liability.[3]
Finally, I agree with Abell that the decision in Pimm v Graybar Elec. Co. (27 AD2d 309) is directly in point and dispositive of the negligence based causes of action in plaintiffs’ complaint. In Pimm (supra), a wholesaler of an electrical fixture sold the fixture to Rochester Gas & Electric which had ordered it from the wholesaler by specific name and catalog number. As a result of an alleged defect *297 in the fixture, a lineman sustained an electrical shock and fell to the ground suffering extensive injuries. On motion for summary judgment the Appellate Division, Fourth Department, held that the cause of action in negligence should be dismissed because the purchaser, by naming the fixture by brand and catalog number and by request for direct shipment, took from the distributor the power to make any choice in the item furnished and waived any inspection. The court in Pimm (supra, p 311) stated as follows: “We think that the proof adduced on the motion to dismiss warranted summary judgment for appellant on this cause of action. Whatever might have been the duty of the distributor to inspect the lighting fixture, to discover the defect and to warn if it had in fact come into its possession (see Outwater v. Miller, 3 A D 2d 670; Alfieri v. Cabot Corp., 17 A D 2d 455; affd. 13 N Y 2d 1027; Santise v. Martins, Inc., 258 App. Div. 663), we do not perceive how appellant could be held liable for the breach of such a duty when, by the purchaser’s own specification, the brand name product was routed from a reputable manufacturer in a closed carton directly to the buyer so as to preclude the opportunity for any inspection. By its selection of the fixture by brand name and catalogue number and by its request for direct shipment, the purchaser took from the distributor the power to make any choice in the item furnished and waived any inspection by it. In these circumstances, there could be no recovery against appellant for its failure to inspect the lighting fixture. Accordingly, the second cause of action should have been dismissed.”
Here, plaintiffs do not submit any affidavits and offer no argument on the negligence causes of action in their memorandum other than to assert that Pimm (supra) is not controlling as to the strict products liability causes of action. While I agree with this assertion, I find that under the undisputed facts, Abell is entitled to summary judgment on the negligence causes of action.
In accordance with all of the foregoing, the motion for summary judgment is granted as to the negligence and warranty causes of action and denied as to the strict products liability causes of action.

. The doctrine of strict products liability in New York has specifically been held to include not only manufacturers (Codling v Paglia, 32 NY2d 330) but suppliers (Velez v Craine & Clark Lbr. Corp., 33 NY2d 117) and vendors of defective products (Mead v Warner Pruyn Div., Finch Pruyn Sales, 57 AD2d 340, supra) as well.

. It should he noted there are some cases, not relevant here, which while acknowledging the validity of the doctrine enunciated in Mead (supra), have in effect carved out limited1 exceptions due to the unique position of the defendant and circumstances presented (see, e.g., Osborn v Kelly, 61 AD2d 367 — prescribing physician; Bichler v Willing, 58 AD2d 331 — retail druggist).

. In passing I note that the attorney for Abell submitted an affidavit in which he states, upon information and belief, that an instruction manual was delivered to Brainerd at the time of delivery of the punch press and that the manual specifies the type of safeguarding equipment that is available as optional equipment. Relying on Biss v Tenneco, Inc. (64 AD2d 204, mot for lv to app den 46 NY2d 711) he asserts that Abell is entitled to summary judgment. Such reliance is misplaced or at the least is premature. First, the rule is so well settled as to require no citation that an attorney’s affidavit made without personal knowledge is of no value on a motion for summary judgment. Second, while counsel for Abell attaches a copy of an instruction manual, there is lacking any statement by any party having personal knowledge that such manual was ever delivered to Brainerd. Thus, unlike the situation in Biss (supra), there is a question as to whether knowledge of available safety options was ever brought home to Brainerd.