OPINION OF THE COURT
John A. K. Bradley, J.
In this action, plaintiff Helen Chandler brought suit against Northwest Engineering Co. (Northwest) and Hodge & Hammond, Inc. (H & H), who in turn impleaded the third-party defendant, John Arborio, Inc. (Arborio). Mrs. Chandler’s claim for the wrongful death of her husband, James, sounded in negligence and strict products liability.
On September 3, 1981, a jury found both Northwest and H & H liable on both causes of actions, and found Arborio liable over in the third-party action. Total damages were assessed at $600,000. In a Dole v Dow Chem. Co. (30 NY2d 143) apportionment, the jury found Northwest 90% liable and Hodge & Hammond 10% liable; on the third-party action, the jury found Arborio 50% liable for contribution.
Plaintiff’s intestate, James R. Chandler, an employee of Arborio, was killed in the course of employment on April 18,1972. At the time of his death, he had been working for several months for Arborio as a labor foreman engaged in the construction of a five-mile strip of New Jersey Highway Route 15 in Sparta, New Jersey. Mr. Chandler’s death resulted from an accident involving a model 80-D Northwest shovel, designed and manufactured by Northwest. Mr. Chandler’s employer Arborio ordered the shovel from *435 Northwest which shipped it directly to Arborio. The shovel was actually distributed by Hodge & Hammond, which had a leasing agreement and purchase option with Arborio as Northwest’s representative. The option was exercised and Arborio purchased the shovel from H & H.
The 80-D shovel was being used to dig a trench. Mr. Chandler released the “dog brake” on the shovel, which then started moving forward toward Chandler. Although he ran to escape, Chandler was overtaken by the shovel. He was killed instantly.
H & H has now moved to set aside the jury verdict based upon several grounds. For the reasons stated herein, the motion is denied.
1. CHOICE OF LAW
Preliminarily, mention should be made of the choice of law issue in this case. Third-party defendant Arborio has cross-moved for an order setting aside the verdict based, in part, upon the argument that New Jersey law, rather than New York law, governs the third-party action. New Jersey law would bar an action for contribution against an employer who, like Arborio, has been held obligated to pay, and has been paying, workers’ compensation benefits on the claim. (NJ Stats, Ann, § 34:15-8.) In New York, election of that remedy by the employee does not preclude an action by a third party for contribution against the employer.
In resolving the conflict as to which State’s law should apply to both the main action and the third-party action, this court looked to the seminal opinion in Babcock v Jackson (12 NY2d 473). The Court of Appeals in Babcock (p 481) abandoned the rigidity of the lex loci delecti doctrine in favor of the “center of gravity” or “grouping of contracts” principle which gives “controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.”
While courts in cases subsequent to Babcock (supra) have sometimes struggled with its doctrine, and at times have sought a more structured rule in its application (e.g., Neumeier v Kuehner, 31 NY2d 121), it is the opinion of this *436 court that its principle is still the law of this State. (See O’Connor v Lee-Hy Paving Corp., 579 F2d 194, cert den 439 US 1034, reh den 441 US 918.)
Pursuant to that doctrine, this court examined the relationship of New Jersey and of New York to the facts to determine which State’s interest predominates. In view of the fact that New Jersey’s major basis for applying its law was that it was the situs of the accident, the following New York contacts indicate that New York has the more significant interest in applying its law: the residence of plaintiff and of plaintiff’s decedent, the incorporation of Hodge & Hammond and of Arborio, the sale and delivery of the injury-causing instrumentality, and the base of operations for Arborio were all in New York. These contacts are particularly significant in choosing New York law as governing the third-party action, where the issue revolved around the potential for liability of a New York employer to a New York defendant, rather than around the facts surrounding the New Jersey accident itself.
New York has a compelling interest in protecting the rights of its citizens to seek reimbursement for wrongs committed by third parties. This interest becomes preeminent when both parties are New York citizens whose relationship arose in New York, and when a great deal of the conduct which forms the basis for apportionment of responsibility between the parties occurred in New York. The wrongful conduct of Arborio was divided between New York, where it failed to instruct its employees properly, and New Jersey, where it improperly operated the pull shovel; thus, even under a lex loci delecti analysis, it would not have been erroneous for this court to apply New York law. For these reasons, this court adheres to its original decision to apply New York law to find the third-party action for contribution not barred by election of New Jersey workers’ compensation benefits.
2. NEGLIGENCE
Movant’s first ground for setting aside the verdict asserts that “a sales agent [cannot] properly be held liable in negligence to an injured third party for nonfeasance, such as failure to inspect, test and/or warn.”
*437 The general rule is that although a seller with reason to know of a dangerous or potentially dangerous condition in a product he sells must take reasonable care to protect its user, he has no duty to ascertain unknown facts.[1] The issue then becomes under what circumstances will a seller be deemed to have “reason to know” of a potential danger.
The reputation of the manufacturer, or source of supply (see Restatement, Torts 2d, § 402, comment e), is but one factor to consider in determining whether a seller has been put on notice which would require his taking protective measures. In Alfieri v Cabot Corp. (17 AD2d 455, affd 13 NY2d 1027) the Appellate Division found no obligation upon A & P supermarket to test charcoal briquets under all the circumstances present in that case: the briquets were part of a mass shipment which had arrived at A & P — and were sold by A & P — already packaged by the manufacturer; there was no dangerous potential inherent in proper use of the briquets known to A & P or the public; A & P could not have discovered the danger by mere physical inspection, and there was no showing that the ultimate purchaser relied upon A & P’s special knowledge or expertise. In Outwater v Miller (3 AD2d 670) the Second Department considered such factors as whether the vendor bought from a reputable source of supply and whether the ultimate purchaser bought the chattel by brand name. See, also, Pimm v Graybar Elec. Co. (27 AD2d 309, 311) which found that “[wjhatever might have been the duty to the distributor to inspect ***, to discover the defect and to warn”, there was no breach in view of the fact that the product was purchased by catalogue number and routed from a reputable manufacturer in a closed carton directly to the buyer.
*438 As with any other issue requiring a determination on reasonableness, the question of the existence and extent of H & H’s duty to inspect and/or test was a question of fact, properly consigned to the jury to determine in light of all the attendant circumstances. With specific regard to the facts in the case at bar, it must be emphasized that this is not a case of a defect in the manufacture of a perfectly designed product. In that situation, it would perhaps re: quire a greater showing to demonstrate a duty on the supplier, retailer, distributor or other nonmanufacturer defendant to inspect each product for possible defects. Rather, this is a case where the alleged defect was in the design of the shovel, a design with which, according to testimony adduced at trial, H & H was or should have been familiar. Thus, it was well within the province of the jury to find that H & H was privy to facts giving rise to “reason to know” of the defect in that design, creating an obligation to warn. The jury could then have determined that that duty was unmet, constituting negligence on H & H’s part.
Similarly, it was the function of the jury to determine whether, in this situation, H & H had a duty to warn of the danger. “[W]here a particular product * * * may become unreasonably dangerous in its use, a seller * * * may be required to give * * * warning on the container as to the proper use thereof.” (Kaempfe v Lehn & Fink Prods. Corp., 21 AD2d 197, 199-200, mot to dismiss app den 16 NY2d 1044, app dsmd 18 NY2d 784, mot withdrawn 19 NY2d 701, affd 20 NY2d 818.) “[Fjailure to warn about the dangers attendant upon the use of the product may *** make the product defective”. (Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55, 63.)[2] The Court of *439 Appeals in McLaughlin v Mine Safety Appliances Co. (11 NY2d 62, 68) stated the rule as follows: If the jury finds a product “inherently dangerous ***, then the defendant distributor was under a duty to give reasonable warnings of latent dangers in the use thereof, if any were known to it.” (See, also, Billiar v Minnesota Min. & Mfg. Co., 623 F2d 240, 243; Young v Elmira Tr. Mix, 52 AD2d 202, 205.)
This court initially instructed the jury that a duty to inspect, test and warn existed on the part of the manufacturers and sellers or suppliers, and that the jury was to determine whether those duties had been met. Some courts have held that “in a proper case the court can decide as a matter of law that there is no duty to warn or that the duty has been discharged as a matter of law”. (Lancaster Silo & Block Co. v Northern Propane Gas. Co., supra, p 65.) However, upon the request of H & H, the court recharged the jury, instructing them to decide whether (and if so, to what extent) the duties existed, as well as whether they had been breached. It is the opinion of this court that the latter charge accurately reflects the state of law at this time. “The generally accepted rule *** is that the reasonableness vel non of a set of warnings is a question for the jury”. (Lancaster Silo & Block Co. v Northern Propane Gas Co., supra, pp 64-65.) This court finds that, under the circumstances of the case, these questions were properly consigned to the jury, and that it cannot hold, as a matter of law, that the jury erred in finding H & H liable in negligence.
3. STRICT PRODUCTS LIABILITY
Movant’s second argument is that, as a self-proclaimed “sales agent”, H & H bears a special status exempting it from strict products liability. In support of this proposition, H & H cites Wellman v Supreme Farmstead Equip. (100 Misc 2d 956, 959), which insulates a defendant *440 seller who “neither designed, manufactured, delivered or installed the equipment which was purchased. Indeed, they never had any opportunity to control this equipment, oversee its installation or have any input with respect to any aspect of its design, manufacture or installation.”
That rule, however, seems to derive from a negligence, or fault-based, analysis, inappropriate to strict products liability. This court finds more persuasive the reasoning of the Appellate Division, Third Department, in Mead v Warner Pruyn Div., Finch Pruyn Sales (57 AD2d 340). The court in Mead found strictly liable a retailer who had had no control over the product.
In Kirby v Rouselle Corp. (108 Misc 2d 291, 294-295) the court outlined the analysis of the Mead decision, based upon section 402A of the Restatement of Torts, Second, and upon a California decision, Vandermark v Ford Motor Co. (61 Cal 2d 256), and gave its own reasons for adhering to Mead: “‘“[T]he seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products” (Restatement, Torts 2d, §402A, Comment C).’ (Mead v Warner Pruyn Div., Finch Pruyn Sales, supra, p 341.) The court also noted (supra, p 344) that: ‘[T]he retailer may seek contribution from the manufacturer as a joint tortfeasor (see CPLR 1401; Dole v Dow Chem. Co., 30 NY2d 143) or provide for contractual indemnity (see Haman v Humble Oil & Refining Co., 34 NY2d 557; 2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.09) or finally, seek indemnity from the manufacturer based upon strict prod- *441 nets liability (see Infante v Montgomery Ward & Co., 49 AD2d 72, 75).’
“As stated in Nickel v Hyster Co. (97 Misc 2d 770, 771): ‘Although section 402 A uses the specific term “seller”, comment f makes it apparent that the rule applies to any manufacturer, wholesale or retail dealer, or distributor who is engaged in the business of selling products for use or consumption. Under the strict products liability doctrine as it exists in New York (see Codling v Paglia, 32 NY2d 330), defendants can be manufacturers, distributors, retailers, processors and makers of component parts who sell the product alleged to have caused injury (1 PJI 2:141), in essence, those responsible for placing the defective product in the marketplace (Queensbury Union Free School Dist. v Walter Corp., 91 Misc 2d 804).’
“1. The doctrine of strict products liability in New York has specifically been held to include not only manufacturers (Codling v Paglia, 32 NY2d 330) but suppliers (Velez v Craine & Clark Lbr. Corp., 33 NY2d 117) and vendors of defective products (Mead v Warner Pruyn Div., Finch Pruyn Sales, 57 AD2d 340, supra) as well.”
It is the opinion of this court that the Kirby and Mead decisions correctly analyzed the rationale underlying the doctrine of strict products liability, and appropriately applied that doctrine to find sellers, distributors and retailers liable regardless of control over or access to the defective product. Thus, H & H, as a result of its having been in the chain of distribution of the defective shovel, without regard to its self-styled designation as “sales agent”, may be properly held liable in strict products liability. Therefore, the jury determination of liability on that cause of action will not be set aside by this court.
4. contribution/indemnification
Finally, H & H asserts that it is entitled to complete indemnification by Northwest rather than mere partial contribution. As bases for this argument, H & H maintains that, as agent to Northwest, H&His entitled to indemnification from its principal. H & H adds that, even with regard to agency theories, H & H is entitled to indemnity as a “passive” wrongdoer compared to Northwest’s “active” *442 negligence (should the negligence verdict against H & H be upheld by this court). H & H also asserts that, if the negligence cause of action is not upheld, H & H is entitled to complete indemnification as one who is only “strictly” liable.
These arguments ignore the thrust of Dole v Dow Chem. Co. (30 NY2d 143, supra) and its codification in CPLR 1402, which provide for apportionment of damages based upon relative culpability without regard to outmoded concepts of “active/passive” negligence or “misfeasance/nonfeasance”.
Defendant H & H cites CPLR 1404 (subd [b]) which states that “[n]othing contained in this article shall impair any right of indemnity *** under existing law.” The Practice Commentary to subdivision (b) states that the provision is designed to enable a principal to get indemnity from his agency where he previously could not. (McLaughlin, McKinney’s Cons Laws of NY, Book 7B, CPLR, C1404:2, p 382.) Thus, a vicariously liable principal now could be wholly indemnified by his wrongdoing agent. The reverse does not necessarily follow, however. An agent who is liable in his own right, while potentially entitled to contribution if the principal is a joint tort-feasor, is not perforce entitled to full indemnity by virtue of his agency status.
Dole (supra) abolished the active-passive distinction that would bar contribution by a passive or active tort-feasor to an active tort-feasor. Instead, “the active tort-feasor may now seek an apportionment of damages against a third party responsible either in whole or in part for the tort.” (Berardi v Getty Refining & Marketing Co., 107 Misc 2d 451, 460.) Thus, under H & H’s labels of Northwest as the “active” tort-feasor and itself as the “passive” tort-feasor, Northwest is entitled to contribution from H & H to the extent of its liability, as assessed by the .trier of fact.
The Court of Appeals in Rogers v Dorchester Assoc. (32 NY2d 553, 564) summarized Dole (supra): “The rule of apportionment applies when two or more tort-feasors have shared, albeit in various degrees, in the responsibility by their conduct or omissions in causing an accident, in violation of the duties they respectively owed to the injured *443 person.” (Emphasis added.) There is no distinction, other than in the percentage of contribution between misfeasance and nonfeasance.
The court in Rogers (supra, pp 565-566) continued: “The rule in the Dole case had primarily, of course, the dramatic effect of allowing comparative apportionment among joint tort-feasors even where their respective degrees of responsibility for the accident were not equal. To this extent the rule in the Dole case went beyond merely correcting the peculiar New York development of ‘active and passive’ negligence terminology and doctrine in third-party liability and practice (for an analysis of that development, see Bush Term. Bldgs. Co. v Luckenbach S.S. Co., 11 AD2d 220, supra). It was hardly intended to overturn basic and satisfactory principles of common-law indemnification between vicariously liable tort-feasors and tort-feasors guilty of the acts or omissions causing the harm. In short, the apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable, as the employer of a negligent employee, the owner of a motor vehicle operated by a negligent driver, or, as here, the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it.”
H & H cites Rogers (supra) arguing that it is only vicariously liable, and is therefore entitled to full indemnity. However, H & H was found liable based upon its own actions and inactions, upon duties a jury attributed to H & H and found to have been unmet by H & H and upon H & H’s position in the chain of distribution. Liability was not based upon any agency relationship between H & H and Northwest; no liability was based vicariously upon H & H’s relationship to Northwest. Thus H & H is not entitled, on that theory, to full indemnification.
As the court stated in Berardi (supra, p 460), “the upshot of [Dole] is the creation of a spectrum”. It is for the jury to determine where this case fits on that spectrum, i.e., for what percentage of the damages each defendant is liable under the facts in this case. This court cannot say that, as a *444 matter of law, the jury erred in assessing H & H’s liability at 10%.
For the above-stated reasons, therefore, H & H’s motion to set aside the verdict is denied in its entirety.

. Section 401 of the Restatement of Torts, Second, provides that: “A seller of a chattel manufactured by. a third person who knows or has reason to know that the chattel is, or is likely to be, dangerous when used by a person to whom it is delivered or for whose use it is supplied, or to others whom the seller should expect to share in or be endangered by its use, is subject to liability for bodily harm caused thereby to them if he fails to exercise reasonable care to inform them of the danger or otherwise to protect them against it.”
Section 402 states that: “A seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it.”

. The Fourth Department in Lancaster (supra, p 64, n 1) cites section 388 and comment k thereto of the Restatement of Torts, Second, for guidelines on the duty to warn, and lists a sample of cases in which courts have adopted the guidelines: “When warning of defects unnecessary. One who supplies a chattel to others to use for any purpose is "under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is hot necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made. However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous. In such *439 case, if the supplier, having such special experience, knows that the condition involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, he is required to inform them of the risk of which he himself knows and which he has no reason to suppose that they will realize.
“A number of courts have adopted these guidelines (e.g. Reed v Pennwalt Corp., 22 Wash App 718; Baylie v Swift & Co., 27 Ill App 3d 1031; McPhail v Municipality of Culebra, 598 F2d 603; Barnes v Litton Ind. Prods., 555 F2d 1184; Jacobson v Colorado Fuel & Iron Corp., 409 F2d 1263 [9th Cir]).”