JOYCE BICHLER, an Infant, by Her Father and Natural Guardian MAX BICHLER, et al., Respondents, v LEO WILLING, Appellant, et al., Defendants.

First Department, July 14, 1977

*Russell H. Beatie, Jr.,* of counsel (*Steven C. Kany* and *David B. Howorth* with him on the briefs; *Dewey, Ballantine, Bushby, Palmer & Wood,* attorneys), for Leon Willing, appellant and for Eli Lilly and Company, defendant.

*Alfred S. Julien* of counsel (*David Jaroslawicz* with him on the brief; *Julien & Schlesinger, P. C.,* attorneys), for respondents.

YESAWICH, J. This appeal, from an order denying defendant Willing's motion for summary judgment or for dismissal of the complaint with prejudice, concerns itself with a pharmacist's liability, as a retailer, for injuries allegedly occasioned because of the use of a prescription drug, sold by the pharmacist.

It is alleged that in 1953, while Dorothy Bichler was pregnant with the plaintiff, Joyce Bichler, she ingested diethylstilbestrol (DES) a drug manufactured by defendant, Eli Lilly & Co., prescribed by defendant Fleischer, a physician, and dispensed by the appellant, a pharmacist. Some time later Joyce Bichler allegedly suffered severe and permanent personal injuries because of this drug. Thereafter several personal injury actions were commenced, including this action against

the pharmacist, in which the theories of recovery asserted are negligence, breach of warranty and strict products liability.

The record does not reveal any actual negligence on the appellant's part. Indeed it appears he filled the prescription precisely as he was directed. There being no allegation that he did any compounding, added to or took from the product as it had been prepared by the manufacturer, or that he did anything to change the prescription furnished him or that he adopted and represented the product as his own, appellant, as a matter of law, cannot be said to have been negligent in any of these respects. *(Commissioners of State Ins. Fund v City Chem. Corp.,* 290 NY 64, 69.) Nor can plaintiffs recover in negligence on the hypothesis that appellant dispensed the drug without first inspecting or testing it for the purpose of discovering its latent dangers. (2 Frumer and Friedman, Products Liability, § 18.03[1].) And, in view of the absence of any showing of a difference between the DES chosen by the druggist and other available brands, his choice of the particular name brand of DES cannot be classified as negligence. Accordingly the negligence cause of action must be dismissed.

As for the breach of warranty cause of action while there are imprecise conclusory allegations respecting the druggist's general practice when he dispensed prescribed drugs, of giving advice as to the drug's purpose and use, there is no specific factual reference to his having proffered any oral or written warranty regarding the safety or side effects of DES or that he even generally commented on its use. Also it is not claimed the bottle containing this drug had any written warranties affixed to it. Thus, there is no basis on which recovery can be allowed for breach of an express warranty.

Plaintiffs also maintain a retail druggist, even if he properly fills a prescription with an unadulterated drug should be treated no differently than any other retailer, and hence should be held responsible for a breach of the implied warranties of fitness and merchantability if the drug he sells later produces harmful side effects. Although this proposition has apparently not previously been considered in this State it has been addressed in both Florida, *(McLeod v Merrell Co.,* 167 So 2d 901 [Fla]) and North Carolina, *(Batiste v American Home Prods. Corp.,* 32 NC App 1) and in each instance it has been rejected. Both of those courts observed implied warranties are conditioned on the buyer's reliance upon the skill and judgment of the seller but when a consumer asks a druggist to fill

a prescription, thus enabling him to obtain a drug which is not otherwise available to the public, he does not rely on the druggist's judgment as to whether that particular drug is inherently fit for its intended purpose but rather he places that confidence and reliance in the physician who prescribed the remedy. On the implied warranty issue the reasoning of *McLeod* and *Batiste* is sufficiently persuasive to justify concluding, under the circumstances here presented, there is no cause of action for breach of any implied warranties.

As noted plaintiffs rely also on the doctrine of strict products liability. That doctrine, articulated in *Codling v Paglia* (32 NY2d 330), has already been extended to include not only manufacturers but suppliers of defective products as well. *(Velez v Craine & Clark Lbr. Corp.,* 33 NY2d 117.) Inasmuch as this doctrine recognizes a discretely separate and independent cause of action, distinguishable from an action based on warranty *(Micallef v Miehle Co.,* 39 NY2d 376), those authorities imposing liability on retailers on implied warranty theories, except for lending support generally to the premise that courts need not be reluctant to do so here, are inconclusive on the point of whether a retailer logically can be held liable under the strict products liability doctrine. What is compelling though is the fact that many of the very same social and economic reasons which prompted applying that doctrine to manufacturers and suppliers militate, with equal force, in favor of applying it to retailers. *(Mead v Pruyn Div.,* 87 Misc 2d 782, affd 57 AD2d 340.)

Though this is so, nevertheless, we believe a convincing argument exists for the proposition that retail druggists while dispensing drugs do not come within this doctrine if they comply with certain conditions considered in the commentary to section 402A of the Restatement, Torts 2d. Comment *k.,* in relevant part, provides as follows:

"Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. * * * Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. * * * The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given where the situation calls for it, is not to be held to strict liability for unfortu-

nate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

From the record herein it is unclear whether or not at the time of the sale there was any recognized risk which called for a warning. A seller of drugs is only required to give a warning if he has knowledge of the dangerous ingredient or side effect, or if by the application of reasonable, developed, human skill and foresight he should have such knowledge. (Restatement, Torts 2d, § 402A, Comment *j.*) But this does not mean a retail pharmacist, like the appellant, is under any obligation to independently test the drug's chemical structure for side effects or other possible risks for as was perceived in *Codling v Paglia (supra)*, pp 340-341 "In today's world, it is often *only the manufacturer* who can fairly be said to know and to understand when an article is * * * safely made for its intended purpose. Once floated on the market, many articles * * * defy detection of defect * * * *[T]he manufacturer* * * * *alone* * * * has the practical opportunity * * * to turn out useful * * * but safe products." (Emphasis added.) These remarks are especially appropriate to the drug field.

Accordingly, a majority of this court has determined that under the circumstances here presented, there is no cause of action for strict products liability against this appellant. However, on this issue, speaking for myself alone, I suggest a strict products liability cause of action has been stated for in her complaint plaintiff alleges appellant "knew or, in the exercise of reasonable diligence, should have known that said drug was unsafe and unfit for use by reason of the dangerous effects * * * to a fetus during the pregnancy of its mother" and that he failed to warn of those dangers. Furthermore, in my view, summary judgment to the defendant is inappropriate for he has failed to make a prima facie showing that plaintiffs' claims are meritless. Since appellant has not demonstrated that he did not have actual knowledge of the potential risks involved in the consumption of DES or that he could not, at the time, have attained that knowledge by the exercise of reasonable, developed human skill, I believe Special Term properly denied summary judgment insofar as concerns the strict products liability claim.

Appellant's contention that section 6815 (subd 2, par j) of the Education Law precludes a finding of liability against him

is unconvincing for that section applies to mislabeling and misbranding and not to strict products liability claims.

Order of Supreme Court, New York County, entered March 28, 1977, *inter alia,* denying defendant Willing's cross motion for summary judgment or dismissal of the complaint as against him, insofar as appealed from, should be reversed, on the law, without costs, and said cross motion granted and the complaint, in its entirety, dismissed as against defendant Willing.

KUPFERMAN, J. P., BIRNS and CAPOZZOLI, JJ., concur in opinion by YESAWICH, J.; YESAWICH, J., dissents in part and would affirm denial of summary judgment insofar as concerns the strict products liability claim.

Order, Supreme Court, New York County, entered on March 28, 1977, so far as. appealed from, reversed, on the law, without costs and without disbursements, the cross motion of defendant Willing granted, and the complaint dismissed and the action severed as to said defendant-appellant.