**Ronald INGRAM and Adell Ingram, Appellants (Plaintiffs Below),**

v.

**HOOK'S DRUGS, INC., Appellee (Defendant Below).**

No. 4–684A145.

Court of Appeals of Indiana, Fourth District.

April 16, 1985.

Rehearing Denied June 27, 1985.

---

Thomas C. Doehrman, Thomas C. Doehrman, P.C., Indianapolis, Michael R. McEntee, Bowman, Crowell & Teeters, Fort Wayne, for appellants.

Mark W. Baeverstad, Leonard E. Eilbacher, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee.

MILLER, Presiding Judge.

Plaintiffs Ronald and Adele Ingram filed suit against Hooks Drugs, alleging that Hook's failure to warn either plaintiff of possible side effects associated with the medication Valium was the proximate cause of injuries suffered by Ronald Ingram. Hook's Drugs filed a Motion to Dismiss which by virtue of Ind.Rules of Procedure, Trial Rule 12(b)(8), was transformed into a Motion for Summary Judgment. After a hearing, the trial court granted the motion, stating:

"... the Court now finds that the defendant's pharmacist, and the defendant, had no legal duty in the filling of a physician's prescription to warn the phy-

sician's patient of the qualities and characteristics of a drug such as Valium, in the absence of an allegation that a direction for use of such warning statement is included within the prescription by the physician.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that defendant's Motion to Dismiss is sustained, and this cause is dismissed, costs taxed against the plaintiffs."

The Ingrams now appeal, claiming the trial court erred:

1. in granting summary judgment in this matter; and
2. in finding Hook's pharmacist had no legal duty to warn the Ingram's of potential side effects of the drug Valium.

We affirm.

## FACTS

Plaintiff-appellant Ronald Ingram received a prescription for the medication Valium from his treating physician. His wife took the prescription to a Hook's Drugs pharmacy in Fort Wayne on September 21, 1981 to have it filled.

The pharmacist filled the prescription exactly as ordered by the treating physician. Hence the medication received was the correct drug, in proper concentration, and unadulterated. Further, the label on the drug contained all instructions or warnings for use that were ordered by the treating physician. The pharmacist did not, however, provide Ingram with any warnings, either verbally or in writing, concerning possible adverse reactions or side effects associated with Valium.

Ten days later while at work, Ingram experienced an adverse reaction to a Valium tablet and fell from a ladder, fracturing his leg. His complaint alleges Hook's negligently failed to warn him of side effects associated with Valium, including dizziness, drowsiness, and syncope, failed to advise him to avoid working near machinery, and failed to add these warnings to the label on the drug. The treating physician was not made a party to this proceeding.

## DECISION

On appeal from a grant of summary judgment, the only issues are whether there is a genuine question of material fact and whether the trial court correctly applied the law. *Poole v. Corwin* (1983), Ind.App., 447 N.E.2d 1150. In determining whether a genuine issue of material fact exists, the facts established by the party opposing the motion must be taken as true and all doubts must be resolved against the party making the motion. *Crase v. Highland Village Value Plus Pharmacy* (1978), 176 Ind.App. 47, 374 N.E.2d 58. Here there is no doubt as to the relationship between the parties. The Ingrams do not assert that the relationship was anything other than that of a pharmacy and one of its customers. There is no allegation that Hook's Pharmacist had any prior knowledge of Ingram's medical history or condition. Our task then is to determine whether the court correctly applied the law in determining that summary judgment was proper.

In Indiana the tort of negligence is comprised of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of the defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Neal v. Home Builders, Inc.* (1953) 232 Ind. 160, 111 N.E.2d 280.

The Ingrams contend the question of duty on the part of a pharmacist to warn customers is a mixed question of law and fact and, therefore, summary judgment is inappropriate. We disagree. Our supreme court in *Miller* stated:

"The duty to exercise care for the safety of another arises *as a matter of law* out of some relation existing between the parties, and *it is the province of the court to determine whether such a relation gives rise to such duty.*" (emphasis added.)

*Miller*, 308 N.E.2d at 706, *quoting Neal v. Home Builders, supra.* Consequently, the trial court was correct in granting summary judgment if it found Hook's Pharmacist owed no duty to Ingram.[1]

The Ingrams initially argue the statutory law of Indiana, specifically IND.CODE 25–26–13–1 *et seq.*, creates a duty in a pharmacist to warn a customer of all possible side effects of a prescription drug. They rely on the following portions of the statute:

"The practice of pharmacy is declared to be a professional occupation in the state of Indiana, affecting the public health, safety, and welfare and must be subject to regulation and control in the public interest by the board of pharmacy.

I.C. 25–26–13–1, and,

" 'the practice of pharmacy' or 'the practice of the profession of pharmacy' or the practice of the 'profession of pharmacy' means ...

(iii) the proper and safe storage and distribution of drugs and devices, the maintenance of proper records thereof, and the responsibility for *advising, as necessary, as to the contents, therapeutic values, hazards, and appropriate manner of use of drugs or devices."* (Emphasis added.)

I.C. 25–26–13–2. The Ingrams contend that this language creates a mandatory duty on a pharmacist to include his own warnings on the label of a prescription drug. Hook's drugs, on the other hand, contends the above statutory language requires advising only "as necessary." *Id.* Hook's also contends that I.C. 25–26–13–4 vests the Board of Pharmacy with the power to promulgate rules, regulations and exercise other powers as may be "necessary" to implement and enforce the practice of pharmacy. As evidence that the Board of Pharmacy has specifically regulated what warnings should be placed on the labels of a prescription drug, Hook's cites 856 I.A.C. 1–23–1, which reads as follows:

"Sec. 1. In the sale or dispensing of any dangerous drug or narcotic, the pharmacist shall be required to affix to the immediate container in which such dangerous drug or narcotic is delivered a label bearing the following information:

(a) The name and address of the establishment from which such drug was sold.

(b) The date on which the prescription for such drug was filled.

(c) The number of such prescription as filed in the prescription files of the pharmacy where the prescription was filled.

(d) The name of the practitioner who prescribed such drug.

(e) The name of the patient, and if such drug was prescribed for an animal, a statement of the species of the animal and the owner's name.

(f) The directions for use of the drug *as contained in the prescription."* (Emphasis added.)

Hook's argues this regulation places the duty to warn on the physician who prescribes the drug and prohibits the pharmacist from including his own warnings.[2]

◼ Our examination of I.C. 25–26–13–1 *et seq.* discloses no evidence of mandatory duty on the part of a pharmacist filling a

---

**1.** We also disagree with Ingrams' assertion that a duty may be shown by custom and practice. Ingram's authorities stand only for the proposition that custom and practice may be relevant evidence of standard of care *after* the law has imposed a duty of care. *See Roberts v. Indiana Gas & Water Co.* (1966), 140 Ind.App. 409, 218 N.E.2d 556, *reh. denied on other grounds,* 140 Ind.App. 409, 221 N.E.2d 693.

**2.** As evidence, Hook's cites the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* which sets for stringent labeling requirements for drugs sold in interstate commerce but exempts pharmacists filling a prescription drug. 21 U.S.C. § 353(b)(2) exempts prescription drugs from the labeling requirements as long as the prescription container bears a label containing:

"1. the name and address of the dispenser;
2. the serial number and date of the prescription or its filling;
3. the name of the prescriber;
4. the name of the patient; and
5. the directions for use and *any cautionary statements, if any, contained in such prescription."*

21 U.S.C., § 353(b)(2).

prescription to warn a customer of all possible hazards associated with that drug. The statutory language vests the Board of Pharmacy with the authority to regulate and control the practice of pharmacy. 856 I.A.C. 1–23–1 requires a pharmacist only to include directions for use as contained in the prescription. While we cannot accept Hook's conclusion that this regulation prohibits pharmacists from including their own warnings, we conclude a pharmacist does not have a statutory duty to warn customers of all the hazards associated with a prescription drug.

We turn then to an examination of caselaw in this and other jurisdictions to determine if such a duty exists. Although this is a case of first impression in Indiana, the related issue of a manufacturer's duty to warn has been addressed. In *Ortho Pharmaceutical Corp. v. Chapman* (1979), 180 Ind.App. 33, 388 N.E.2d 541, a consumer brought a negligence and products liability action against the manufacturer of an oral contraceptive alleging the manufacturer failed to warn her of the risks of developing thrombophlebitis. In discussing the duty of a manufacturer of a prescription drug to warn of potential side effects, the court held that the duty to warn extends only to the prescribing physician and not others:

> "Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative."

*Ortho Pharmaceutical*, 388 N.E.2d at 549, *quoting Reyes v. Wyeth Laboratories, Inc.* (5th Cir.1974), 498 F.2d 1264. The court further stated:

> "The reasons for this rule should be obvious. Where a product is available only on prescription or through the services of

a physician, the physician acts as a 'learned intermediary' between the manufacturer or seller and the patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon that judgment. The physician decides what facts should be told to the patient...."

*Ortho Pharmaceutical*, 388 N.E.2d at 549, *quoting Terhune v. A.H. Robbins Co.* (1978), 90 Wash.2d 9, 577 P.2d 975. Although the *Ortho Pharmaceutical* case is not on all fours with the case at bar, much of the rationale expressed therein is applicable here. The court made the important point that the decision to warn of potential side effects requires knowledge of the nature of the drug, and of the medical history and other facts about the patient.

This reasoning has been applied in other jurisdictions which have overwhelmingly held that a pharmacist does not have a duty to warn every customer of the hazards associated with prescription drugs.

In *McLeod v. W.S. Merrell Co., Div. of Richardson Merrell, Inc.* (1965), Fla., 174 So.2d 736, the action was brought against a drug manufacturer and the retail druggists for injuries allegedly resulting from taking "Mer/29", a drug prescribed by the plaintiff's physician to control body cholesterol. The plaintiff sued the druggists, contending they breached an implied warranty of fitness. The lower courts had dismissed the plaintiff's complaint against the retail druggists and the supreme court in Florida affirmed:

> "In the instant case, the commodity, 'Mer/29' was not available to the general public in the sense that it could be purchased by any customer who entered the store and paid the price. Actually, it was available only to a very limited segment of the public who had previously been seen by the personal physician and who

presented their doctor's prescription directing that the drug be supplied. Obviously, the patient-purchaser did not rely upon the judgment of the retail druggist in assuming that the drug would be fit for its intended purpose. This confidence had been placed in the physician who prescribed the remedy. Supposedly he, in turn, placed his reliance on the representations of the manufacturer."

*Id.* at 738.

Similarly in *Batiste v. American Home Products Corp.* (1977), 32 N.C.App. 1, 231 S.E.2d 269, the plaintiff brought a negligence and strict liability action against the manufacturer, prescribing physician, and retail pharmacist for the prescription and sale of an oral contraceptive. The trial court dismissed the cause of action against the retail pharmacist. In affirming the dismissal, the court stated:

"Here plaintiff alleges that she had consulted a physician, obtained a prescription and carried it to defendant Pike's Drug Store, Inc., to be filled. The prescription was filled as directed. There is no allegation that the product was other than it was supposed to be. There is no allegation that the druggist did any compounding or added to or took from the product as prepared and contained in the sealed container, or that the druggist did anything to change the prescription given him, or that the drug delivered to plaintiff was in any way different than the drug prescribed by plaintiff's physician, or contained any foreign material. Certainly defendant is not qualified or licensed to advise plaintiff with respect to the best oral contraceptive for her to use to prevent pregnancy. Defendant is not a physician."

*Id.* 231 S.E.2d at 274. A third case holding a pharmacist has no duty to warn a cus-

tomer having a prescription filled is *Kinney v. Hutchinson* (1984), La.App., 449 So.2d 696. Here the plaintiff was shot by someone under the influence of alcohol and preludin, a prescription drug obtained at the defendant pharmacy. He sued the pharmacy, claiming it negligently failed to warn of the hazards of preludin. The Louisiana Court of Appeals affirmed summary judgment, holding the pharmacist had no knowledge the person would use the drug in connection with alcohol, and no duty exists to warn every customer of every potential hazard. *Id.* at 698.

Finally in *Bichler v. Willing* (1977), 58 A.D.2d 331, 397 N.Y.S.2d 57, the court held a pharmacist had no duty to warn a customer of the dangers associated with taking DES during pregnancy. In discussing the relationship between a prescription drug customer and a pharmacist, the court stated:

"[W]hen a consumer asks a druggist to fill a prescription, thus enabling him to obtain a drug which is not otherwise available to the public, he does not rely on the druggist's judgment as to whether that particular drug is inherently fit for its intended purpose but rather he places that confidence and reliance in the physician who prescribed the remedy."

*Id.* 397 N.Y.S.2d at 59.[3]

■ The rationale of the above authorities is that the duty to warn of hazards associated with prescription drugs is part and parcel of the physician-patient relationship because it is best appreciated in this context. This is similar to the view expressed in *Ortho Pharmaceutical, supra.* We concur. The decision of weighing the benefits of a medication against potential dangers that are associated with it requires an individualized medical judgment. This individualized treatment is available in the

---

**3.** We are aware of only one case where a pharmacist has been found to have a duty to warn a customer having a prescription filled. In that case, *Hand v. Krakowski* (1982), 89 A.D.2d 650, 453 N.Y.S.2d 121, the New York Court found a druggist potentially liable for failure to warn a customer of the possible side effects of taking a drug with alcohol, where it was shown the phar-

macist knew the customer was an alcoholic and knew the drug in question was contraindicated. The *Hand* court distinguished *Bichler* on the basis of the pharmacist's personal knowledge that the customer was an alcoholic. This case is factually distinguishable from the case at bar, and we decline to apply its rule of law.

context of a physician-patient relationship which has the benefits of medical history and extensive medical examinations. It is not present, however, in the context of a pharmacist filling a prescription for a retail customer. The injection of a third-party in the form of a pharmacist into the physician-patient relationship could undercut the effectiveness of the ongoing medical treatment.[4] We perceive the better rule to be one which places the duty to warn of the hazards of the drug on the prescribing physician and requires of the pharmacist only that he include those warnings found in the prescription.

 Accordingly, we hold Hook's Drugs had no duty to warn the Ingrams of the hazards associated with the prescription drug Valium and affirm the trial court's dismissal of the Ingram's complaint.

CONOVER and YOUNG, JJ., concur.

---

4. The Ingrams have attached several pages from *U.S. Pharmacopeia* to their brief. This publication contains approximately twenty to twenty-five instructions and cautionary statements to the patient on the taking of Valium and lists thirty-two side effects to Valium. Ingrams' position would require a pharmacist filling a prescription for Valium to give the entire list of side effects and cautionary statements. Such a voluminous warning would only confuse the normal customer and be of dubious value. This matter is better handled by a treating physician.