**HOOK'S–SUPERX, INC., Kathy O'Dell and Craig Merrick, Appellants–Defendants Below,**

**v.**

**Patrick D. McLAUGHLIN, and Michelle McLaughlin, for themselves and as parents, natural guardians, and next friends of Patrick Michael McLaughlin and Alicia Rose McLaughlin, minors, Appellees–Plaintiffs Below.**

No. 50A03–9302–CV–00036.

Court of Appeals of Indiana, Third District.

Jan. 20, 1994.

John C. Hamilton, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, Attorneys for Hooks–SuperX, Inc., and Kathy O'Dell.

Robert J. Konopa, Konopa & Murphy, P.C., South Bend, for Craig Merrick.

Anthony DeBonis, Jr., Smith & DeBonis, East Chicago, for appellees.

STATON, Judge.

Pursuant to Ind. Appellate Rule 4(B)(6), Hook's SuperX, Inc. and two of its pharmacists (hereinafter collectively referred to as

"the Pharmacy") appeal the denial of their motion for summary judgment. Although the Pharmacy presents two issues for our review, we conclude that the following is dispositive: whether the Pharmacy owed a duty to the plaintiffs to refuse to fill prescriptions under the facts of this case.

We reverse and remand.

On January 11, 1988, Patrick McLaughlin ("McLaughlin") saw Dr. Bernard Edwards for his painful back condition. Dr. Edwards gave McLaughlin a prescription for a propoxyphene salt.[1] McLaughlin took the prescription to the Hook's Store on East LaSalle in South Bend, Indiana, to have it filled. The pharmacist correctly filled the prescription.

Over the next ten months, McLaughlin obtained numerous prescriptions for propoxyphene salts from Dr. Edwards, either during office visits or by telephone. Most of these prescriptions were filled at the Hook's store on East LaSalle. In late 1988, Dr. Edwards discontinued writing prescriptions for McLaughlin because he suspected that McLaughlin was addicted. In December 1988, McLaughlin considered suicide. He subsequently entered a substance abuse program.

McLaughlin and his wife, Michelle, ("the McLaughlins") brought suit against the Pharmacy alleging it had breached a duty owed to them when it filled•Dr. Edwards' prescriptions. The Pharmacy filed a motion for summary judgment which the trial court denied. This appeal ensued.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Ste-*

*phenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the non-moving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

■ The three elements of actionable negligence are: (1) a duty flowing from the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff that stemmed from that breach. *Tucher v. Brothers Auto Salvage Yard, Inc.* (1991), Ind. App., 564 N.E.2d 560, 562, *trans. denied.* Whether a duty of care is owed is a question of law for the court to decide. *Muex v. Hindel Bowling Lanes, Inc.* (1992), Ind.App., 596 N.E.2d 263, 266. The McLaughlins allege that the Pharmacy's duty to refuse to honor Dr. Edwards' prescriptions arose from the following: (1) a statutory duty of care; (2) a gratuitously assumed duty of care; and (3) a general duty of care.

■ First, the McLaughlins argue that a statutory duty is imposed by IND.ADMIN.CODE, title 856, r. 1–20–1 (1992), which provides that:

"A pharmacist licensed to practice pharmacy[,] . . . as a part of the responsibility, to not knowingly violate the [Indiana Board of Pharmacy's] standards for the competent practice of pharmacy shall not . . .

(g) sell . . . controlled substances . . . with . . . [a] prescription, where such sale or distribution is not in good faith *and enables the person to whom the sale is made to supply or divert the con-*

---

1. Propoxyphene salts are listed in Schedule IV of the Federal Controlled Substance Act. The propoxyphene salts relevant in this case are propoxyphene hydrochloride and propoxyphene napsy- late. These salts are available in several prescription products including the following: "Darvocet–N–100, Darvon, Wygesic, Propacet, and SK 65.

trolled substances ... *in an unlawful manner.* The sale or distribution of controlled substances or legend drugs in unusually large amounts and within an unusually short period of time to the same individual is considered to be against the public welfare, health and safety and may be determined to be a sale or distribution not in good faith. (Emphasis added).

We disagree with the McLaughlins. The function of this regulation ultimately allows the Indiana Board of Pharmacy to revoke a pharmacist's license for selling, in bad faith, controlled substances to a person who the pharmacist knows is diverting the controlled substances in an unlawful manner. Because the McLaughlins have not shown that the Pharmacy knowingly, in bad faith, enabled McLaughlin to divert or supply the controlled substances in violation of a criminal statute, we conclude the Pharmacy did not breach the duty imposed by 856 I.A.C. 1–20–1(g).

■ Next, the McLaughlins argue that a duty of care arises from IND.CODE 25–26–13–16(b) (1988). It provides a pharmacist with immunity from civil liability, if, in good faith, the pharmacist refuses to fill a prescription because, in the exercise of the pharmacist's professional judgment, honoring the prescription would: "(1) be contrary to law; (2) be against the best interest of the patient; (3) aid or abet an addiction or habit; or (4) be contrary to the health and safety of the patient." In the present case, there was no refusal by the Pharmacy to fill a lawful prescription. Thus, IC 25–26–13–16(b) does not apply under the facts presented.

■ The McLaughlins also allege that a statutory duty is imposed by the following language from IND.CODE 25–26–13–16(a) (1988): "A pharmacist shall exercise his professional judgment in the best interest of the patient's health when engaging in the practice of pharmacy." We do not think this provision imposes upon pharmacists a duty to second-guess the judgment of the prescribing physician. Rather, we find the reasoning of the Fourth District in *Ingram v. Hook's Drugs, Inc.* (1985), Ind.App., 476 N.E.2d 881, *trans. denied,* to be persuasive:

The decision of weighing the benefits of a medication against potential dangers that are associated with it requires an individualized medical judgment. This individualized treatment is available in the context of a physician-patient relationship which has the benefits of medical history and extensive medical examinations. It is not present, however, in the context of a pharmacist filling a prescription for a retail customer. The injection of a third-party ... into the physician-patient relationship could undercut the effectiveness of the on-going medical treatment.

*Ingram, supra,* at 886–87.[2]

■ Here, one of the pharmacists stated that he called Dr. Edwards' office concerning the frequency at which McLaughlin was receiving the medication. The pharmacist was instructed to fill the prescription. We conclude that to require a pharmacist to refuse to fill a prescription despite such assurances from the physician would be contrary to sound policy. When a pharmacist calls a physician concerning a question about a patient's prescription, the pharmacist should be permitted to rely on the physician's instructions in good faith as a matter of law.[3] Our

---

2. The McLaughlins argue that *Ingram* is distinguishable from the case at bar because the court therein noted there was no allegation that the pharmacist had any prior knowledge of the customer's medical history or condition. *Ingram, supra,* at 883. Here, the McLaughlins contend that the fact that one of the pharmacists telephoned Dr. Edwards to check on the prescriptions, and that the Pharmacy had a computerized informational system, shows knowledge on the part of the Pharmacy. We decline to impose upon pharmacists a duty to refuse to fill prescriptions and, thus, intrude into the traditional physician-patient relationship absent some evidence

that the pharmacist had actual, prior knowledge that the drug was contraindicated. Because the McLaughlins have put forth no such evidence, we will not depart from *Ingram, supra.*

3. We do not suggest that a pharmacy is no more than "a warehouse for drugs and that a pharmacist has no more responsibility than a shipping clerk who must dutifully and unquestionably obey the written orders of the omniscient physicians." *Riff v. Morgan Pharmacy* (1986), 353 Pa.Super. 21, 508 A.2d 1247, 1251, *trans. denied.* However, we do recognize a pharmacist's professional judgment must defer to the physician's

result today is consistent with the following view expressed by our supreme court in *Indiana Board of Pharmacy v. Horner* (1961), 241 Ind. 326, 172 N.E.2d 62, 67: "It is beyond our comprehension how a [pharmacist] could be acting in bad faith when filling a prescription of a physician who is acting in good faith in the course of his practice."

Finally, the McLaughlins argue that the Pharmacy gratuitously assumed the duty to refuse to fill the prescriptions when it equipped the Hook's stores with a computerized information system that reveals the prior history of a patient's prescriptions. Alternatively, the Pharmacy was under a general duty of care to refuse to fill the prescriptions. For the reasons stated above, we conclude that imposing such a duty on pharmacists under either of these theories would be contrary to public policy and would undermine the physician-patient relationship.

Having concluded that the Pharmacy was under no duty to the McLaughlins to refuse to fill the prescriptions, we reverse and remand with instructions that the trial court enter summary judgment in favor of the Pharmacy.

HOFFMAN, J., concurs.

SULLIVAN, concurs in result without separate opinion.

training, experience, and knowledge of the patient's condition. In *McKee v. American Home Products, Corp.* (1989), Wash., 782 P.2d 1045, 1053, the court acknowledged that the propriety of a particular drug regimen cannot be made based on the physical appearance of the patient alone:

> "The propriety of a prescription depends not only on the propensities of the drug but also on the patient's condition. A prescription which is excessive for one patient may be entirely reasonable for the treatment of another...."

*Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App.3d 124, 127, 92 Ill.Dec. 740, 485 N.E.2d 551. A physician may often have valid reasons for deviating from the drug manufacturer's recommendations based on a patient's unique condition.... "It is the duty of the prescribing physician to know the characteristics of the drug he is prescribing, to know how much of the drug he can give his patient...." *Jones v. Irvin*, 602 F.Supp. 399 (S.D.Ill.1985). *McKee, supra*, at 1053.

However, a pharmacist's deference to the physician is not without limits. A pharmacist has a duty to be alert for patent errors in prescriptions; for example, obvious lethal doses, inadequacies in the instructions, known contra-indications, or incompatible prescriptions and to take corrective measures. *McKee, supra*, at 1052.