**Albert ALLBERRY, Appellant–Plaintiff,**

v.

**PARKMOR DRUG, INC. d/b/a Park Pharmacy, Appellee–Defendant.**

**No. 20A03–0503–CV–125.**

Court of Appeals of Indiana.

Sept. 16, 2005.

William J. Cohen, Cohen Law Offices, Elkhart, for Appellant.

Thomas F. Waggoner, Drew F. Seaman, Straub, Seaman & Allen, P.C., St. Joseph, MI, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Albert Allberry ("Allberry") appeals the trial court's grant of summary judgment in favor of Appellee–Defendant, Parkmor Drug, Inc. d/b/a Park Pharmacy ("Parkmor"). We affirm.[1]

### Issue

Allberry raises two issues on appeal, which we consolidate and restate as whether Parkmor owed a duty to Allberry to either warn him of the potential side effects associated with a particular prescription drug or, in the alternative, provide Allberry with the manufacturer's product information.

### Facts and Procedural History

On or before June 1, 2002, Allberry purchased the prescription drug Caverject—which is generally used to treat impotence—from Parkmor. At the time, Parkmor did not give Allberry "any product information" from the drug's manufacturer or any "drug information, leaflets, [or] pamphlets." Appellant's App. at 19. In addition, Parkmor did not warn Allberry about the adverse side effects associated with the use of Caverject. In particular, Parkmor did not advise Allberry to seek medical attention if, after using the drug, he had an erection for more than four hours.

On June 1, 2002, after injecting Caverject into his penis, Allberry experienced a "severely painful erection which lasted for almost 72 hours." *Id.* On June 2, 2002, Allberry had to undergo surgery to reduce the erection. After his surgery and upon inquiry to Parkmor, Allberry's wife received the "patient information leaflet," which contains the following, pertinent information: "The erection should last about one hour. If an erection lasts more than 4 hours, seek immediate medical attention. If you notice other effects not listed above, contact your doctor or pharmacist." *Id.* at 23. As a result of the incident, Allberry developed "priapism and later became impotent." *Id.* at 20.

On July 28, 2004, Allberry filed an amended complaint against Parkmor, alleging, in part, that the pharmacy had failed to provide him with any warnings regarding the adverse side effects of the prescription drug Caverject. On August 19, 2003, Parkmor filed its second motion to dismiss, which the trial court treated as a motion for summary judgment. On February 9, 2004, the trial court granted summary judgment to Parkmor with respect to

---

**1.** We hereby deny both parties' motions for oral argument.

Allberry's failure to warn claim. Subsequently, Allberry agreed to dismiss his remaining claim against Parkmor—i.e., that Parkmor had improperly filled his prescription—and the trial court's February 9th order became a final appealable order. Allberry now appeals.

## Discussion and Decision

### I. Summary Judgment Standard of Review[2]

On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has

the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

### II. Analysis

On appeal, Allberry argues that the trial court erroneously granted summary judgment to Parkmor because, as his pharmacist, Parkmor owed a duty of care to warn him of the adverse side effects of Caverject. In the alternative, Allberry contends that the grant of summary judgment was erroneous because, at the very least, Parkmor had a duty to provide him with the manufacturer's product information on the drug at issue. We disagree and, in so doing, reaffirm our holding in *Ingram v. Hook's Drugs, Inc.*, 476 N.E.2d 881, 885 (Ind.Ct.App.1985), *reh'g denied, trans. denied*.

Here, the undisputed evidence demonstrates that the relationship between Parkmor and Allberry was that of a pharmacy and its customer. The designated evidence also reveals that the drug in question, i.e., Caverject, was prescribed to Allberry by his physician[3] and, further, that the prescription itself contained only the following language: "Caverject 40 mg[,] use as directed[,] 1 bottle." Appellant's App. at 22. Our task, then, is to determine whether, as a matter of law, Parkmor had a duty to warn Allberry of the side effects associated with Caverject, which was prescribed by his physician.

---

**2.** Apparently, the trial court considered the warning information that was attached to Allberry's complaint and, thus, converted Parkmor's motion to dismiss into one for summary judgment. *See* Ind. Trial Rule 12(B) ("If, on a [12(B)(6) motion], matters outside the pleading are presented to and not excluded by the trial court, the motion shall be treated as one

for summary judgment and disposed of as provided in Rule 56.").

**3.** Indeed, Allberry has filed a medical malpractice proposed complaint against the prescribing physician, which is pending before the medical review panel.

In *Ingram,* 476 N.E.2d at 885, another panel of this Court determined that a pharmacist has no duty to warn a consumer of the possible side effects associated with a prescription drug prescribed by a physician. The *Ingram* court concluded that physicians, not pharmacists, are in the better position to weigh the potential risks and rewards of particular medications for specific patients and, thus, declined to impose a duty upon pharmacists to warn customers about the potential side effects of medication *unless such warnings were included in the prescription received from the physician. Id.* at 886–87; *see also Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 518 (Ind.1994) (affirming that the responsibility of warning patients about drug side effects lies with physicians but imposing a duty where the pharmacist had personal knowledge that the customer was taking medication more quickly than prescribed). Indeed, the *Ingram* court reasoned:

> [T]he duty to warn of hazards associated with prescription drugs is part and parcel of the physician-patient relationship because it is best appreciated in this context. The decision of weighing the benefits of a medication against potential dangers that are associated with it requires an individualized medical judgment. This individualized treatment is available in the context of a physician-patient relationship which has the benefits of medical history and extensive medical examinations. It is not present, however, in the context of a pharmacist filling a prescription for a retail customer. The injection of a third-party in the form of a pharmacist into the physician-patient relationship could undercut the effectiveness of the ongoing medical treatment. We perceive the better rule to be one which places the duty to warn of the hazards of the drug on the prescribing physician and requires of the pharmacist only that he include those warnings found in the prescription.

*Id.* at 886–87.

The rationale expressed in *Ingram* is consistent with the majority of other jurisdictions that have addressed this issue and refused to impose a duty to warn on pharmacists. These jurisdictions generally reason that imposing such a duty on the pharmacist would place the pharmacist between the physician—who knows the patient's physical condition—and the patient and could lead to harmful interference in the patient-physician relationship. *See, e.g., Cottam v. CVS Pharmacy, Inc.,* 436 Mass. 316, 764 N.E.2d 814, 821 (2002) (holding that in the absence of a voluntarily assumed duty, "where the pharmacist has no specific knowledge of an increased danger to a particular customer, the pharmacist has no duty to warn that customer of potential side effects"); *Happel v. Wal-Mart Stores, Inc.,* 199 Ill.2d 179, 262 Ill. Dec. 815, 766 N.E.2d 1118, 1129 (2002) (holding that "a narrow duty to warn exists where . . . a pharmacy has patient-specific information about drug allergies, and knows that the drug being prescribed is contraindicated for the individual patient"); *Moore v. Memorial Hosp.,* 825 So.2d 658, 664 (Miss.2002) (extending the "learned intermediary" doctrine [4] to pharmacists in Mississippi); *but see Dooley v. Everett,* 805 S.W.2d 380, 386 (Tenn.Ct.App. 1990) (declining to rule as a matter of law on whether the doctrine extended to pharmacists but criticizing the extension of the learned intermediary doctrine to pharma-

---

[4] The learned intermediary doctrine provides that "a prescription drug manufacturer's duty to warn of dangers associated with its product runs only to the physician; it is the physician's duty to warn the ultimate consumer." *McKee v. Am. Home Prods. Corp.,* 113 Wash.2d 701, 782 P.2d 1045, 1049 (1989).

cists); *appeal denied.* By contrast, a few jurisdictions have imposed a duty on pharmacies that goes beyond merely filling prescriptions accurately. *See, e.g., Horner v. Spalitto,* 1 S.W.3d 519, 523–24 (Mo.Ct.App. 1999) (holding that a pharmacy could be found negligent for filling a prescription for what the pharmacist knew to be a lethal dose), *reh'g denied, trans. denied; Lasley v. Shrake's Country Club Pharmacy, Inc.,* 179 Ariz. 583, 880 P.2d 1129, 1132–34 (Ct.App.1994) (imposing a duty for failing to warn the customer when filling two prescriptions that adversely interacted with one another), *review denied; Hand v. Krakowski,* 89 A.D.2d 650, 651, 453 N.Y.S.2d 121 (1982) (finding a duty when pharmacy failed to warn the customer of the drug's adverse interaction with alcohol where the customer was known by the pharmacist to be an alcoholic).

Because we find the majority view to be more persuasive, today, we reaffirm our

holding in *Ingram.*[5] As such, Parkmor had no duty to warn Allberry of the side effects associated with Caverject. Parkmor also had no duty to give Allberry the manufacturer's product information, which contained certain warnings about the use of Caverject, as such information was not included in the prescription itself. Accordingly, under these circumstances, the trial court properly granted summary judgment to Parkmor.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Parkmor.

Affirmed.

SHARPNACK, J., and DARDEN, J., concur.

---

5. We note that the Indiana Legislature has given pharmacists certain powers and duties. Indiana Code Section 25–26–13–31, for example, provides:
   (a) A pharmacist may do the following:
   (1) Obtain and maintain patient drug histories and other pharmacy records that are related to drug or device therapies.
   (2) Perform drug evaluation, drug utilization review, and drug regimen review.
   (3) Participate in the selection, storage, and distribution of drugs, dietary supplements, and devices. However, drug selection must comply with IC 16–42–19 and IC 16–42–22.
   (4) Participate in drug or drug related research.
   (b) A pharmacist who participates in an activity allowed under subsection (a) is required to follow the standards for the competent practice of pharmacy adopted by the board.
   In addition, Indiana Code Section 25–26–13–16 provides:
   (a) A pharmacist shall exercise his professional judgment in the best interest of the patient's health when engaging in the practice of pharmacy.

   (b) A pharmacist has a duty to honor all prescriptions from a practitioner or from a physician, podiatrist, dentist, or veterinarian licensed under the laws of another state. Before honoring a prescription, the pharmacist shall take reasonable steps to determine whether the prescription has been issued in compliance with the laws of the state where it originated. The pharmacist is immune from criminal prosecution or civil liability if he, in good faith, refuses to honor a prescription because, in his professional judgment, the honoring of the prescription would:
   (1) be contrary to law;
   (2) be against the best interest of the patient;
   (3) aid or abet an addiction or habit; or
   (4) be contrary to the health and safety of the patient.
   Accordingly, if the legislature wanted to require pharmacists to warn customers of the side effects associated with prescription drugs, it would have done so by statute. We will not impose such a duty absent clear legislative intent.