NUBAR SUKLJIAN, Individually and as Parent and Natural Guardian of MOSES SUKLJIAN, an Infant, Plaintiff, v CHARLES ROSS & SON COMPANY, INC., Defendant, and K.M. EQUIPMENT CORPORATION, Defendant and Third-Party Plaintiff-Respondent-Appellant. ALEX ZEEVE & COMPANY, INC., et al., Third-Party Defendants-Respondents; COMMERCIAL EQUIPMENT AND MACHINERY COMPANY, Third-Party Defendant-Respondent-Appellant; GENERAL ELECTRIC COMPANY, Third-Party Defendant-Appellant-Respondent. (And Fourth- and Fifth-Party Actions.)

Third Department, March 6, 1986

### APPEARANCES OF COUNSEL

*Hesson, Ford, Sherwood & Whalen (Michael J. Hutter* and *H. Neal Conolly* of counsel), for K.M. Equipment Corporation and another, defendant and third-party plaintiff-respondent-appellant.

*Ainsworth, Sullivan, Tracy & Knauf (Frank J. Warner, Jr.,* of counsel), for defendant.

*Lyons & Duncan (Condon A. Lyons* of counsel), for third-party defendant-respondent-appellant.

*Donohue, Donohue & Sabo, P. C. (Fred J. Hutchison* of counsel), for third-party defendant-appellant-respondent.

### OPINION OF THE COURT

CASEY, J.

On February 26, 1978, while employed at Ardex Corporation, a corporation owned by his father, plaintiff's son injured his hand in the rollers of a high speed machine which he was then attempting to clean. Consequently, plaintiff sued defendant Charles Ross & Son Company, Inc. (Ross & Son), the manufacturer of the machine, and defendant K.M. Equipment Corporation (K.M.), the immediate seller of the machine to Ardex, in negligence, strict products liability and breach of warranty. Ensuing cross claims and third, fourth and fifth-party actions disclosed that the machine had initially been purchased from Ross & Son by third-party defendant General Electric Company on January 15, 1962. After various intermittent sales, the machine was sold to Ardex on April 28, 1976 by K.M.

It appears that at the time of the original purchase in 1962,

General Electric directed Ross & Son to install thereon a feed hopper and a safety trip switch. The hopper made it possible to load a larger amount of material into the machine at one time and, insofar as it surrounded the center and rear rolling cylinders, it acted as a housing guard. The safety trip switch was a bar or chain running between two casings on either side of the rolling cylinders that caused the rollers to stop quickly when an employee tripped the switch by hand, but it would not release or separate the rollers. At the time of General Electric's purchase of the machine in 1962, both these devices were optional equipment to a purchaser but became standard safety equipment in 1975. General Electric used the machine for 10 years and, in 1973, sent out invitations for bids on a sale, describing it as "surplus", the machine to be sold as "As Is—Where Is". Purchasers were urged to inspect the machine before bidding, and the price was apparently set by weight as for scrap metal. The machine was purchased from General Electric by Semco Equipment Company, a nonparty, for $35 in 1973. Although General Electric cannot state whether the safety devices above described were in place at the time of the sale by it, the president of K.M. has sworn that the machine did not contain the safety devices at the time K.M. received it and at the time of its sale to Ardex.

General Electric's motion for summary judgment to dismiss the third-party complaint and cross claims against it for legal insufficiency was granted by Special Term to the extent of dismissing the strict products liability and the breach of warranty causes of action. These cross appeals ensued. Special Term's dismissal of the breach of warranty cause of action is not an issue on this appeal.

In regard to Special Term's dismissal of the cause of action alleging strict liability against it, General Electric argues that it only was an "occasional seller" of such equipment, and, since it was not engaged in the regular business of selling such products, it cannot be held in strict liability (citing *Gobhai v KLM Royal Dutch Airlines*, 85 AD2d 566, *affd* 57 NY2d 839).

We agree. The policy considerations justifying extension of strict tort liability to sales of new products by commercial dealers do not apply with equal force to sales of used products *(Strict Liability in Tort: Liability of Seller of Used Product,* Ann., 53 ALR3d 337, 339). Obviously, such a dealer, as distinguished from one who sells new products, would have great difficulty in passing on the burden of liability to the original

manufacturer whose conduct may have been responsible for the defect. Since such policy considerations are lacking herein, strict tort liability should not be extended to General Electric's sale of the used machine. General Electric was not in the business of selling surplus machinery and the sale by General Electric was specifically described in the invitation to bid as being on an "As Is—Where Is" basis (see, *Wilkinson v Hicks*, 126 Cal App 3d 515, 179 Cal Rptr 5; *La Rosa v Superior Ct.*, 122 Cal App 3d 741, 176 Cal Rptr 224). The invitation also specifically urged the purchaser to inspect before buying and denied any warranties running to the surplus property being sold. The price was set by weight as for scrap and this machine was actually sold for $35. In these circumstances, we hold that the doctrine of strict tort liability is inapplicable as a matter of law (see, Restatement [Second] of Torts § 402 A comment b [1965]) and affirm the dismissal of such cause of action by Special Term.

We further agree that Special Term properly denied General Electric's motion for summary judgment on the negligence claim. The fact that the machine was priced by General Electric for sale by weight as for scrap and sold for $35 does not preclude the existence of a factual issue that it was reasonably foreseeable that the machine would be kept in use and used as it was at the time it caused the injury to plaintiff's son. The safety devices were in place when General Electric first purchased the machine. General Electric representatives cannot state that the devices were still in place at the time of the sale by General Electric. At the time the machine was sold to Ardex, however, the devices had been removed. Thus, a factual issue exists as to whether the safety devices were removed while the machine was in General Electric's possession.

Accordingly, the portion of Special Term's order granting third-party defendant General Electric Company's motion for summary judgment dismissing the causes of action alleged against it for strict products liability should be affirmed, as should Special Term's denial of General Electric's motion dismissing the cause of action alleging negligence, which is the basis of the cross appeal.

HARVEY, J. (concurring in part and dissenting in part). We concur with the majority in the dismissal of the causes of action for strict products liability and breach of warranty. We respectfully dissent from the majority's denial of third-party

defendant General Electric Company's motion for summary judgment as to the alleged cause of action in negligence.

Assuming, arguendo, that General Electric had the legal duty to provide safety devices for the protection of users of the high speed machine, it is incumbent upon defendant K.M. Equipment Corporation (K.M.) to prove that the machine was without those devices when sold by General Electric. To defeat a motion for summary judgment, the opponent must present evidentiary facts sufficient to raise a triable issue of fact *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 290; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.12). The opponent must make his showing by producing evidentiary proof in admissible form or by demonstrating an acceptable excuse for his failure to do so *(Zuckerman v City of New York,* 49 NY2d 557, 562). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" *(supra,* p 562). Where the parties have produced their proof, and the inferences of fact on which the opponent to the motion relies are based upon mere speculation, that opponent may not prevail *(see, Behar v Ordover,* 92 AD2d 557, 558, *appeal dismissed* 59 NY2d 762; *cf. Johnson v Tschiember,* 7 AD2d 1029, 1030).

General Electric last had possession of the machine on June 27, 1973. Following that date, the machine was owned and possessed successively by Semco Equipment Company, third-party defendant Commercial Equipment and Machinery Company, fourth-party defendant East Bay Industries, Inc., and K.M., which sold the machine to plaintiff's corporation, Ardex Corporation, on April 28, 1976. During this entire period of time, no one attempted to use the machine for its originally intended purpose nor to sell it to another for that use. It was only after K.M. rebuilt the machine that it was offered for sale for its originally intended use. Even then, fifth-party defendant Charles W. Ashline Plumbing & Heating, Inc., was hired by Ardex to install the machine and put it into use.

It is true that no employee of General Electric recalls the condition of the machine when it was sold by it and, consequently, General Electric has no witness to disprove K.M.'s allegation that it was sold without necessary safety devices. Nevertheless, the burden of proving that the machine was in a defective condition remains with K.M., who did not come forward with any legally admissible evidence that the machine lacked safety devices when sold by General Electric. It would be pure speculation to conclude that the machine

delivered to Ardex was in the same condition as it was when sold by General Electric. Faced with the necessity of proving that the machine was defective, K.M. has failed to submit any proof which would tend to establish the lack of proper safeguards. Because of K.M.'s failure to offer evidence sufficient to create an issue of fact, the negligence cause of action should have been dismissed.

Beyond that aspect of the motion, in our view it is inconceivable that General Electric can be held liable to K.M. on a negligence theory, which requires proof of a breach of duty. Under the circumstances, it seems logical to us that if no duty exists in strict products liability, none could exist in negligence. But if such a possibility does exist, the facts of the case fall far short of establishing the necessary legal duty of General Electric toward K.M. and plaintiff. The property was advertised for sale under the caveat "As Is—Where Is". The selling price was $35. These two facts, by themselves, rebut any contention that the property was being sold as an operable machine completely suited to the purposes of Ardex. There is no indication in the record that anyone in the chain of title ever considered selling the machine as an operable piece of machinery without first rebuilding it. Before the sale to Ardex, K.M. did rebuild the machine. An admission of this fact is contained in paragraph 10 of K.M.'s answer to the original complaint, which stated that its activity consisted "of rebuilding said used machine".

Recently, this court stated that "[t]he symmetry is clear: absent a duty, there is no breach and, without a breach, there is no liability. Whether a duty exists presents a question of law to be determined by the court based upon the facts and circumstances of the case" (Vogel v West Mountain Corp., 97 AD2d 46, 48; see, Akins v Glens Falls City School Dist., 53 NY2d 325, 332-333; Palsgraf v Long Is. R. R. Co., 248 NY 339, 342). A determination of a duty must be based on reason and sound policy (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055; Donohue v Copiague Union Free School Dist., 64 AD2d 29, 33, affd 47 NY2d 440). There is no duty when a product is not used in a manner for which it was intended or another reasonably foreseeable manner (Micallef v Miehle Co., 39 NY2d 376, 385-386; Restatement [Second] of Torts § 388 comment e [1965]). The transaction involved here is nothing more than a salvage operation. Ardex, as purchaser, knew by the terms of the sale that General Electric made no representation as to the machine's serviceability. The selling price was

no more than the price its weight would bring as scrap metal. There is no proof from which it might be inferred that the sale was made in contemplation of the machine's being put into use in its existing condition. To cast liability on General Electric in these circumstances would, in essence, make it an insurer for all subsequent injuries no matter how remote or unrelated it was to the sale of this machine for salvage.

Furthermore, General Electric's status in this transaction could, at best, be categorized as that of a casual seller. It certainly was not a manufacturer or distributor of this machine. A casual seller has a duty to warn users only of latent defects *(Copp v Corning Glass Works,* 114 AD2d 144, 146). There has been no proof of a latent or unobservable defect which conceivably should have been disclosed. Exposing General Electric to liability under these circumstances does not foster sound policy *(see, Micallef v Miehle Co., supra;* Prosser and Keeton, Torts § 98, at 692-693 [5th ed]).

Accordingly, we would modify Special Term's order and dismiss the complaint in its entirety.

WEISS and YESAWICH, JR., JJ., concur with CASEY, J.; KANE, J. P., and HARVEY, J., concur in part and dissent in part in an opinion by HARVEY, J.

Order affirmed, without costs.