Alexander, J.
(dissenting). On the record presented in this case, I cannot agree that General Electric has established as a matter of law that it is not engaged in the business of selling used industrial machinery so as to warrant summary judgment on the strict products liability claim. Nor can I agree that General Electric has established its entitlement to judgment as a matter of law on the negligence claim. Accordingly, I respectfully dissent.
Strict products liability applies to a seller of a product in a defective condition provided that the seller is engaged in the business of selling such product (see, Restatement [Second] of Torts § 402 A; see generally, Voss v Black & Decker Mfg. Co., 59 NY2d 102, 106-107; Robinson v Reed-Prentice, 49 NY2d 471, 478). Although it is not necessary "that the seller be engaged solely in the business of selling such products”, strict products liability does not apply to "the occasional seller * * * who is not engaged in that activity as a part of his business” (Restatement [Second] of Torts § 402 A comment f). In distinguishing between the occasional or casual seller, to which strict products liability does not apply, and the seller who is engaged in a business other than its primary business, to which strict products liability does apply, the Restatement provides two examples. In regard to the former, the illustrations given are that of a housewife who, on one occasion, sells to her neighbor a jar of jam or sugar and an owner of an automobile, who on one occasion, sells it to his neighbor. In contrast, the example provided to illustrate the latter principle is that of a motion picture theater that sells popcorn or ice cream either for consumption on the premises or in packages to be taken home. Even though the concession stand is incidental to the primary business of the movie theater, strict liability obtains. Although the distinction is one that is not easily applied, the crucial factor distinguishing the two categories would appear to be the number of items sold and the frequency of sales (see, Galindo v Precision Am. Corp., 754 F2d 1212, 1219).
Viewing the evidence in the light most favorable to the party opposing the motion for summary judgment, as we must (see, Robinson v Strong Mem. Hosp., 98 AD2d 976, quoting *99 Goldstein v County of Monroe, 77 AD2d 232, 236), it is apparent that General Electric has not established that in respect to its sale of used industrial equipment it is a casual or occasional seller akin to an ordinary individual who makes an isolated sale. At the very least, this record demonstrates the existence of a genuine issue of fact as to whether General Electric is in fact engaged in the business of selling used industrial equipment.
General Electric, through its manager of policies and procedure in its reentry systems department, frequently conducts sales of used equipment where up to 300 "lots” of equipment are sold. Each "lot” may contain several pieces of equipment, most of which are identified by manufacturer and style number. The lots are specifically arranged to "stimulate competitive bidding”. Moreover, the sales are extensively advertised by the use of media sources such as newspapers, trade magazines and trade papers. Additionally, invitations are mailed to numerous prospective bidders and all the property that is offered for sale is available for inspection and examination prior to bidding. Moreover, the mill that is the subject of this litigation was identified by the name of its manufacturer, information that would be irrelevant, if as contended by General Electric, it was sold for scrap metal, a circumstance in which the weight rather than the manufacturer would be relevant. The record demonstrates that the mill was fully operable and functional when sold and that this sale was pursuant to a company policy to sell operable machines when they were no longer needed.[1]
The conclusion is inescapable here that General Electric does not fall into the category of "occasional or casual seller” exempt from strict products liability. The evidence indicates that General Electric conducts a systematic profit-making scheme of selling hundreds if not thousands of pieces of used industrial machinery each year. The majority apparently relies on the fact that General Electric is a "huge corporation” (majority opn, at p 97) and concludes that their sales of used equipment therefore do not constitute a substantial *100 portion of the corporation’s activities. This reliance is misplaced and the conclusion deriving therefrom, unwarranted. Surely, a dealer in used machinery that conducts frequent sales of hundreds of pieces of machinery is not excluded from the imposition of strict products liability. Similarly, the fact that General Electric engages in numerous commercial activities other than the sale of used machinery does not render those sales casual and occasional so as to shield General Electric from exposure to strict products liability. Indeed, comment f specifically indicates that it "is not necessary that the seller be engaged solely in the business of selling such products”. Thus, just as a movie house that sells food for consumption at home is not excluded from strict products liability, General Electric, which systematically sells large quantities of used industrial machinery, should not bé excluded.
The conclusion that General Electric is not a casual or occasional seller of used industrial machinery is fully supported by the policies underlying strict products liability. A basis for imposing strict liability on the seller of a defective product is that the seller has voluntarily assumed a special responsibility for product safety such that the public has the right to expect that the seller will stand behind the product (see, Restatement [Second] of Torts § 402 A comment c;. Mead v Warner Pruyn Div., 57 AD2d 340; Galindo v Precision Am. Corp., 754 F2d 1212, 1218, supra). Here, General Electric, by releasing a large quantity of used industrial equipment, including this operable machine, into the stream of commerce as part of a systematic profit-making scheme, may properly be held to have assumed the special responsibility for public safety such as that imposed upon all businesses, selling products. It cannot be concluded on this record that the consuming public does not rely on General Electric to stand behind the products it sells for a profit just as the public relies on any seller of large quantities of used equipment. The proposition that vendors of used products are not able to exert pressure for improved safety of products on manufacturers is arguable at best (see, Jordan v Sunnyslope Appliance Propane & Plumbing Supplies Co., 135 Ariz 309, 660 P2d 1236, 1240) and if accepted would preclude strict products liability claims against any dealer in used products. Finally, used product dealers, like any seller of defective products, can recover increased costs caused by their liability within their commercial dealings or through contribution or indemnification in *101 litigation (Jordan v Sunnyslope Appliance Propane & Plumbing Supplies Co., supra, at p 1242). Thus, the policies underlying strict products liability do not support excluding General Electric, a dealer in used industrial machinery, from being subject to a strict products liability claim (see, Galindo v Precision Am. Corp., 754 F2d 1212, supra).
I conclude therefore, that under the facts and circumstances of this case and in light of the policies underlying strict products liability, General Electric was engaged in the business of selling the product that caused the harm and was not, in that respect, an "occasional or casual” seller.[2]
Turning to the negligence claim, the majority opinion determines, for policy reasons, that "the duty of a casual or occasional seller [is at most] to warn the person to whom the product is supplied of known defects that are not obvious or readily discernible” (majority opn, at p 97) and summarily concludes that "General Electric breached no duty” (at p 97). Whether or not the limited duty posited by the majority is warranted, it is inapplicable here where the record does not support the conclusion that General Electric is a "casual or occasional seller”. Thus, I would affirm the determination of the Appellate Division that there is a factual issue concerning whether General Electric, the seller, breached its duty of reasonable care to the buyer and those within the foreseeable scope of risk (see, 116 AD2d 9, 12).
Judges Meyer, Simons, Titone and Hancock, Jr., concur with Judge Kaye; Judge Alexander dissents and votes to modify the order by denying summary judgment to General Electric as to the strict products liability claims asserted against it and, as so modified, to affirm in a separate opinion; Chief Judge Wachtler taking no part.
*102 Order modified, with costs to third-party defendant General Electric, by granting summary judgment to General Electric dismissing the negligence claims asserted against it and, as so modified, affirmed. Question certified answered in the affirmative.

.There is scarce, if any, support in the record for the conclusion of the majority that the mill involved in this case is "the only piece of equipment of its kind in the sale” (majority opn, at p 93). A complete list of the items offered in this particular sale does not appear in the record before us although the partial list provided includes numerous pieces of industrial equipment such as a "flexowriter with tape punch”, a "hydraulic pump” and a "key punch machine”.

.The majority’s reliance on Gobhai v KLM Royal Dutch Airlines (85 AD2d 566, affd 57 NY2d 839), is misplaced. In affirming the grant of summary judgment to an airline defendant sued in strict liability for allegedly defective slippers given a passenger, the court relied on the undisputed fact that the defendant "did not manufacture, design or sell the alleged defective footwear” (85 AD2d, at p 567; emphasis supplied). That the distribution of the slippers was incidental to the basic service provided by the airline demonstrated that there had been no sale of the slippers — i.e., that the purchase of the airline ticket did not include the purchase of the slippers (see, 57 NY2d, at p 841, Fuchsberg, J., dissenting [the majority opinion adopts an inadmissibly narrow definition of sale]). In this case, of course, there is no dispute that General Electric sold the allegedly defective product.